## No. 26546

## The People of the State of Colorado v. Donald Taylor

(545 P.2d 703)

Decided January 26, 1976.

Dale Tooley, District Attorney, O. Otto Moore, Assistant, Brooke Wunnicke, Chief Appellate Deputy, for plaintiff-appellant.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Thomas M. Van Cleave III, Deputy, for defendant-appellee.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

Defendant Donald Taylor was acquitted by a jury of the first-degree assault of a police officer who had attempted to arrest him. The prosecution, pursuant to section 16-12-102, C.R.S. 1973, appeals certain evidentiary rulings of the trial court. We conclude that the court properly admitted some of the controverted evidence, but that the court erred with respect to the admission of other portions of the evidence.

A brief statement of the facts is necessary in order to make clear the basis of the appeal. On the evening of February 15, 1974, Denver police officers Malara and Leary approached defendant as he left the "Apex Social Club." Recognizing him as "the party wanted in our daily bulletin," they asked him for identification. Not satisfied with defendant's response, Officer Leary pulled a wallet out of defendant's pocket, opened it, and found a social security card revealing his true identity. Leary then returned the wallet, and was about to frisk defendant when the latter pushed Leary into Malara and fled. The officers testified that as he was running defendant turned and fired several shots, and the officers fired in return. Defendant made good his escape that night, but was apprehended the next day. He denied either having a firearm in his possession or firing any shots at the officers.

At trial, the defense attacked the credibility of Officer Leary by revealing his alleged racial bias toward the defendant. Both officers were white and defendant was black. The impeachment was sought to be accomplished by cross-examining Leary about several arrests of blacks he had made within a few months of defendant's arrest. The prosecution objected on the ground that such cross-examination would inject collateral issues into the proceedings and confuse the jury. The objection was overruled, and the defense attorney was permitted to inquire in considerable detail into these other arrests.

In each instance, the officer firmly disavowed the use of either racial slurs or of excess force. In rebuttal, the defense called several witnesses to testify as to what transpired at these other arrests, and to contradict Leary's version. The prosecutor renewed his objections but these were overruled on the ground that the proffered testimony went to the officer's credibility. The testimony of the rebuttal witnesses again went into great detail concerning each incident, and was to the effect that Leary was sadistic and brutal in the manner in which he effected the arrests.

At the close of the evidence, the prosecution further renewed its objection and moved for a mistrial. The motion was denied.

### I.

The trial court properly concluded that the alleged racial biases of Officer Leary might be inquired into for the purpose of impeaching his credibility. Cross-examination should be liberally extended to permit a thorough inquiry into the motives of witnesses. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347; *People v. Key,* 185 Colo. 72, 522 P.2d 719; *People v. King,* 179 Colo. 94, 498 P.2d 1142. Within broad limits, any evidence tending to show bias or prejudice, or to throw light upon the inclinations of witnesses, may be permitted. *People v. Simmons,* 182 Colo. 350, 513 P.2d 193; *Stewart v. Kindel,* 15 Colo. 539, 25 P. 990. The trial court must, however, exercise its sound discretion to preclude inquiries that have no probative force, or are irrelevant (*People v.*

*Simmons, supra*; *Johnson v. People*, 171 Colo. 505, 468 P.2d 745); or which would have little effect on the witness' credibility but would substantially impugn his moral character. *People v. Couch,* 179 Colo. 324, 500 P.2d 967.

We hold that the cross-examination was proper insofar as the defense counsel inquired into the officer's asserted racial slurs. Such prejudice, if shown might have greatly assisted the jury in its weighing of the conflicting testimony.

▆▆▆ Once Leary denied that he was racially prejudiced, the defense counsel was entitled to present extrinsic evidence to contradict him. *See Smith v. United States,* 283 F.2d 16, 87 A.L.R.2d 394 (6th Cir. 1960), *cert. denied* 365 U.S. 847, 81 S.Ct. 808, 5 L.Ed.2d 811; *State v. Bailey,* 278 N.C. 80, 178 S.E.2d 809, *app. after remand* 280 N.C. 264, 185 S.E.2d 683, *cert. denied* 409 U.S. 948, 93 S.Ct. 293, 34 L.Ed.2d 218; *see also C. McCormick, Evidence* (2d ed. 1972) § 40; 98 C.J.S. *Witnesses* § 563. In other words, a party who on cross-examination inquires into bias is not bound by the denial of the witness, but may contradict him with the evidence of other witnesses. Indeed, this court has been more liberal than the majority of jurisdictions[1] in permitting the introduction of evidence as to the bias of a witness. In *Kidd v. People,* 97 Colo. 480, 51 P.2d 1020, we held that the court's failure to receive extrinsic evidence relating to the bias of a police officer-witness was reversible error, though the officer himself had not been cross-examined as to his possible bias. And in *Angelopoulos v. Wise,* 133 Colo. 133, 293 P.2d 294, we reaffirmed the proposition that to show bias by extrinsic evidence no foundation need be laid by cross-examination.

We hold that the trial court ruled correctly in admitting rebuttal testimony about the racial slurs pruportedly made by Officer Leary.

## II.

We emphasize, however, the dangers of too readily admitting such extrinsic testimony relating to bias.

"* * * After all, impeachment is not a central matter, and the trial judge, though he may not deny a reasonable opportunity at either stage [*i.e.*, cross-examination or rebuttal testimony] to prove the bias of the witness, has a discretion to control the extent to which the proof may go. He has the responsibility for seeing that the sideshow does not take over the circus. * * *" *McCormick,supra.*

▆▆▆ Much of the controverted evidence admitted in this case dealt not so much with possible racial bias as with details of the arrests made on other occasions by Officer Leary. We believe that the trial judge erred in permitting inquiry into the details of those arrests, both on cross-

---

[1] For the majority rule, *see* Annot., 87 A.L.R.2d 407, and Later Case Service. Most states require a "foundation" in the form of cross-examination of the witness as to his bias.

examination and on rebuttal. Such questions were aimed not merely at impeaching the credibility of the officer, but at maligning his character and official conduct generally. To routinely allow this sort of questioning could greatly delay the trial and in effect make the officer the defendant in a series of mini-trials dealing with the manner in which he arrested countless other persons at other times. The potential for harm would become especially great if the defense could introduce witnesses to testify as to such other arrests; for, if the defense witnesses could give their view of the officer's conduct on these occasions, surely the officer himself should have the right to present witnesses to tell his side of the story. The sideshow could indeed "take over the circus."

 Under our decisions, while the character of a witness for truth and veracity may be shown, impeachment may not be accomplished by attacking the general character of the witness. *People v. Couch, supra*; *Tarling v. People*, 69 Colo. 477, 194 P. 939. Thus, the witness may not be asked about immoral conduct, or even about criminal acts for which he has not been convicted. As this court said in *Tarling, supra*:

"The contrary view [*i.e.*, that general character is open to attack] is based upon the theory of the kindred nature of vices. This involves the necessity for sanctioning the drawing of an inference from an inference. A witness having been shown to be dishonest, or immoral, it is inferred from that trait of character, that he is untruthful; then upon the inference that he is untruthful generally, it may be inferred that he is untruthful in the testimony he has given.* * *"

In *Webb v. People*, 97 Colo. 262, 49 P.2d 381, this court pointed out that:

"* * * Assailing the credibility of witnesses by questioning them about their supposed weaknesses, misdeeds and mis-fortunes, short of crimes whereof they have been convicted, and wholly unrelated to the issue which is being tried, is all too common. * * * Such practice is vicious in its inevitable tendency to prejudice both the party and the witness, and counsel are expected to refrain scrupulously therefrom and thus to observe the spirit as well as the letter of the law."

*See also Ager v. Adams,* 155 Colo. 544, 395 P.2d 735.

 In this area, what may not be asked of the witness himself may not thereafter be proven by the testimony of defense witnesses. Defendant could, of course, have called witnesses to testify as to Officer Leary's reputation in the community for truth and veracity. But even then specific instances of alleged misconduct could not have been detailed. *See* 2 C. *Torcia, Wharton's Criminal Evidence* (13th ed. 1972) § 471.

The evidentiary rulings of the trial court permitting detailed examination into the collateral arrests are therefore disapproved, except that evidence relating directly to racial slurs in connection with collateral arrests was admissible.