The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Tiburcio IBARRA, Defendant–Appellant.

No. 92SA228.

Supreme Court of Colorado,
En Banc.

March 22, 1993.

Rehearing Denied April 12, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John D. Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Eric V. Field, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Katherine Brien, Deputy State Public Defender, Denver, for defendant-appellant.

Justice ERICKSON delivered the Opinion of the Court.

The appellant, Tiburcio Ibarra, was convicted by a jury of two counts of felony menacing in violation of section 18–3–206, 8B C.R.S. (1986), and sentenced to four years of incarceration in the Department of Corrections on each count. On appeal, Ibarra asserts the following grounds for reversal of his judgment of conviction:

(1) The felony-menacing statute, section 18–3–206, 8B C.R.S. (1986), unconstitutionally violates his equal protection rights under article II, section 25 of the Colorado Constitution because the conduct proscribed by section 18–3–206, 8B C.R.S. (1986), a class 5 felony, is indistinguishable from the conduct proscribed by section 18–9–106(1)(f), 8B C.R.S. (1986), disorderly conduct with a deadly weapon, a class 2 misdemeanor;

(2) The district court committed reversible error by limiting a defense witness' testimony to knowledge of the victim's reputation under CRE 404(a) and 405(a) rather than allowing similar transaction testimony of past acts perpetrated by the victim against the witness pursuant to CRE 404(b);

(3) That remarks made by the prosecutor during cross-examination of Ibarra were unduly prejudicial and denied him a fair trial; and

(4) That Ibarra's election to testify on his own behalf was not made voluntarily, knowingly, or intelligently.

We accepted jurisdiction over this appeal and now affirm the judgment of conviction entered against Ibarra.[1]

## I

The information charged that Ibarra, on October 12, 1990, by threat and physical action, and by use of a deadly weapon, knowingly placed Lupe Lozano and her daughter Lori in fear of imminent serious bodily injury in violation of section 18–3–206. Ibarra entered a not guilty plea to these charges of felony menacing and a trial to a jury commenced on February 14, 1991. The acts for which Ibarra was charged stemmed from an altercation between Ibarra and the Lozanos on October 12, 1990, culminating in Ibarra's firing two shots from a revolver through the screen of his bedroom window while the Lozanos were standing outside the window. In his

---

1. Ibarra filed his notice of appeal with the court of appeals on April 6, 1991. We accepted jurisdiction over the appeal on May 29, 1992, pursuant to section 13–4–102(1)(b), 6A C.R.S. (1987), because the constitutionality of section 18–3–206 is called into issue. *Compare* § 13–4–102(1)(b), 6A C.R.S. (1987) (court of appeals has no jurisdiction where the constitutionality of a statute is at issue) *with* § 13–4–102(1)(b), 6A C.R.S. (1992 Supp.) (for appeals taken after July 1, 1992, the court of appeals has no jurisdiction over cases in which a statute has been declared unconstitutional).

defense, Ibarra asserted claims of self-defense and defense of property.

The events, which occurred on October 12, 1990, are the subject of conflicting testimony by the parties. The Lozanos both testified that at approximately 2:00 a.m. they left their apartment, accompanied by Gilbert Garcia, to walk to a local convenience store to purchase cigarettes.[2] While returning home, the three heard an individual, later identified as Ibarra, yelling obscenities at them from within his apartment. Ibarra, who the Lozanos claim sounded drunk, threatened to kill the Lozanos and Garcia because Ibarra felt that the Lozano family was responsible for breaking his kitchen window.[3] Garcia, taking offense to Ibarra's threats and obscenities, invited Ibarra outside to fight, which Ibarra declined to do.[4] The Lozanos and Garcia started to walk toward the Lozanos' apartment when they heard two gunshots. The Lozanos and Garcia then ran to the apartment and called the police.

Within ten minutes, the police arrived at the Lozanos' apartment. The police knocked on the apartment door several times and shouted their presence before the Lozanos opened the door. The police testified that the Lozanos appeared very scared, nervous, and excited as they related their version of the events. After taking statements from the Lozanos, the police went to Ibarra's apartment to speak with him. Ibarra answered the door and allowed the police to enter his apartment. The police testified the Ibarra appeared "angry and confused," and that there was the smell of an alcoholic beverage on Ibarra's breath.[5]

During a consensual search of Ibarra's apartment, the police discovered a revolver containing two live rounds and two spent rounds of ammunition. Ibarra admitted firing the revolver out of his window, but claimed that he felt threatened by the Lozanos and Garcia, and was merely protecting his property from further damage and himself from a potential attack. Ibarra claimed that he could not telephone the police himself because he did not have a phone in his apartment and that he felt the only way to force the Lozanos and Garcia to leave him alone was to shoot his revolver to scare them away.

At trial, Ibarra offered the testimony of his neighbor, Marvin Roundtree, to show prior acts of harassment by the Lozanos against Roundtree. The trial court refused to allow the admission of this specific act testimony, but allowed Roundtree to testify regarding the Lozanos' reputation in the community. Ibarra, who does not speak English, was also advised at trial, through an interpreter, of his right to testify or not testify in his own defense, and elected to testify. During cross-examination, the prosecution made two separate remarks relating to where Ibarra had purchased the revolver which fired the shots and com-

---

2. Garcia, a citizen of Mexico, was visiting the Lozanos on the night of the shooting and had returned to Mexico when the information charging Ibarra with felony menacing was filed. Accordingly, a count of felony menacing against Ibarra involving Garcia was dismissed and Garcia was unavailable to testify at Ibarra's trial.

3. Lupe Lozano and her two minor children, Lori and Mark, had lived in a housing complex in the 200 block of South Acoma for over three years. Ibarra subsequently moved into the complex and became friends with the Lozano family. During the summer of 1990, however, animosity developed between Ibarra and the Lozanos. At the time of the alleged incident, the parties were no longer on speaking terms. Ibarra testified that after they began feuding, his kitchen window was broken on two separate occasions, and that he "knew" that the Lozanos were responsible for the prior vandalism. Lori Lozano testified, however, that Ibarra had told her that his former girlfriend had broken his windows because she was angry with him.

Ibarra testified that on the night in question, he was awakened by someone breaking his kitchen window. He testified that when he looked out his kitchen window, he saw Mark Lozano running away. Ibarra's testimony was refuted by Lupe Lozano who testified that Mark Lozano was visiting his uncle and had not been home all evening.

4. Ibarra testified that Garcia threw a beer bottle towards his apartment which did not hit him. The police were unable to find evidence of the beer bottle outside Ibarra's apartment.

5. Ibarra testified that he had not been drinking on the night in question and that his state of confusion was caused by being awakened by someone breaking his kitchen window.

mented on the fact that it is illegal for convicted felons to possess firearms.[6]

Ibarra was convicted by the jury of two counts of felony menacing and was sentenced to the Department of Corrections for two concurrent four-year terms. Ibarra appealed his conviction to the court of appeals, and we accepted jurisdiction over the appeal.

## II

■ Ibarra claims that the felony-menacing statute, section 18–3–206, 8B C.R.S. (1986),[7] unconstitutionally violates his equal protection rights under article II, section 25 of the Colorado Constitution because the conduct proscribed by section 18–3–206, a class 5 felony, is indistinguishable from the conduct proscribed by section 18–9–106(1)(f), 8B C.R.S. (1986),[8] disorderly conduct with a deadly weapon, a class 2 misdemeanor.

■ We rejected the same argument in *People v. Torres*, 848 P.2d 911 (Colo.1993). *Torres* held that the *actus reus* of felony menacing is more specific than the *actus reus* of disorderly conduct with a deadly weapon. *Id.* at 915. "[C]riminal legislation is not constitutionally infirm simply because the offender's conduct may violate more than one statutory proscription. It is only when 'the *same conduct* is proscribed in two statutes and *different criminal sanctions* apply, that problems arise under equal protection.' " *People v. Velasquez*, 666 P.2d 567, 569 (Colo.1983) (citing *People v. Taggart*, 621 P.2d 1375, 1382 (Colo. 1981)). The fact that the prosecution may exercise discretion as to the statute under which it wishes to prosecute does not violate the tenets of equal protection. *People v. Hulse*, 192 Colo. 302, 305, 557 P.2d 1205, 1206 (1976).[9] Accordingly, we reject Ibarra's constitutional claim for the reasons set forth in *Torres*.

## III

■ Ibarra claims that the district court committed reversible error by limiting Roundtree's testimony to his knowledge of the Lozanos' general reputation for peacefulness rather than allowing Roundtree to testify concerning specific prior acts of

---

6. On direct examination, Ibarra admitted to a prior felony conviction. During cross-examination, the prosecutor asked Ibarra where he had purchased the revolver that was used in this case. Ibarra stated that he had purchased it at a gun shop at 20th and Larimer streets. Thereafter, the prosecutor made the following remark in front of the jury:

> Mr. Ibarra, you know as well as I that gun stores will not sell a gun to a person who has a felony.

The prosecutor's remark was objected to and overruled by the trial court which stated that the remark went to credibility. Subsequently, the prosecutor commented:

> Now, Mr. Ibarra, you know—do you know the—you knew at the time, in August, that you weren't supposed to have a gun.

This remark was also objected to, and the objection was sustained by the trial court.

7. Section 18–3–206 provides:

> A person commits the crime of menacing if, by any threat or physical action, he knowingly places or attempts to place another person in fear of imminent serious bodily injury. Menacing is a class 3 misdemeanor but, if committed by the use of a deadly weapon, it is a class 5 felony.

Section 18–1–901(e) provides the relevant definition of deadly weapon as:

"Deadly weapon" means any of the following which in the manner it is used or intended to be used is capable of producing death or serious bodily injury:
(I) A firearm, whether loaded or unloaded;
(II) A knife;

8. Section 18–9–106(1)(f) provides that:

> A person commits disorderly conduct if he intentionally, knowingly, or recklessly, not being a peace officer, displays a deadly weapon in a public place in a manner calculated to alarm.

9. Ibarra's assertion is that subsection (1)(f) of section 18–9–106, proscribing conduct of "displaying a deadly weapon in a public place in a manner calculated to alarm" is indistinguishable from section 18–3–206, the felony-menacing statute. We note that the record appears to contain no factual foundation that would allow the prosecution to charge Ibarra under this subsection of the disorderly conduct statute. Ibarra, if he displayed a deadly weapon at all, did so in a presumably private place, namely his own home, at a time when no one else was present or saw him do it. It seems unlikely that a homeowner would be charged or convicted of disorderly conduct for displaying a deadly weapon in a public place based on the display of a handgun in his own home when no one else was present.

harassment committed by the Lozanos against Roundtree. Ibarra claims that Roundtree's testimony was admissible under CRE 404(b) to prove the Lozanos' motive, identification, or opportunity to attack Ibarra and destroy his property on the night of October 12.[10] We disagree.

▮ Trial courts are accorded considerable discretion in deciding questions concerning the admissibility of evidence and they have broad discretion to determine the relevancy of evidence, its probative value and its prejudicial impact. *People v. Huckleberry,* 768 P.2d 1235, 1242 (Colo. 1989). Therefore, absent an abuse of discretion, a trial court's evidentiary rulings will be affirmed. *See People v. Lowe,* 660 P.2d 1261, 1264 (Colo.1983). To show an abuse of discretion, an appellant must establish that, under the circumstances, the trial court's decision to reject the evidence was manifestly arbitrary, unreasonable, or unfair. *See King v. People,* 785 P.2d 596, 603 (Colo.1990); *People v. Hampton,* 758 P.2d 1344, 1348 (Colo.1988).

CRE 404 provides in pertinent part:

(a) **Character evidence generally.** Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

. . . .

(2) **Character of victim.** Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor.

. . . .

(b) **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Ibarra claims that Roundtree's testimony was admissible under CRE 404(b) to prove the Lozanos' motive, opportunity, or identity on the evening in question.

Roundtree's testimony was not competent or relevant for purposes of establishing Ibarra's claims of self-defense and defense of property.[11] Both of Ibarra's defenses rested on his reasonable belief that the Lozanos were threatening either him or his property. *See* § 18–1–704, 8B C.R.S. (1986) (use of physical force is justified if it is reasonably believed that another person is using unlawful physical force); § 18–1–706, 8B C.R.S. (1986) (use of reasonable force is justified if it is reasonably believed that another person is attempting to commit criminal mischief). Ibarra did not testify that he knew that the Lozanos had harassed, or committed wrongful acts involving Roundtree.

▮ To establish that Ibarra reasonably believed the use of force was necessary to protect himself or his property, evidence of prior criminal, wrongful, or bad acts perpetrated by the Lozanos against others may have been relevant had Ibarra testified that he had knowledge of those acts and acted on the basis of that knowledge. *See United States v. McClure,* 546 F.2d 670, 672–73 (5th Cir.1977) (holding that under Federal Rules of Evidence 404(b), evidence of a systematic campaign of threats against other persons is admissible to show lack of criminal intent by a defendant who claims

---

**10.** Roundtree testified that he had no personal knowledge of the events which transpired on October 12. Instead, he was prepared to testify that on several prior occasions, members of the Lozano family had harassed him. The record contains no evidence that Ibarra knew of these prior bad or criminal acts, or that they influenced his decision to fire his revolver through his bedroom window.

**11.** Roundtree's testimony could not prove motive because the acts alleged were committed against Roundtree, not Ibarra. The testimony was not proof of opportunity because the events did not occur on the evening in question, nor did the testimony prove identity. It was also undisputed that the Lozanos were standing outside Ibarra's bedroom window when the shots were fired.

to have been illegally coerced). However, opinion or reputation testimony was clearly relevant to establish the Lozanos' reputation in the community for peacefulness, and the trial court permitted Roundtree to testify about the Lozanos' reputation for peacefulness. *See* CRE 404(a)(2). The record does not reflect, however, any evidence that Ibarra was aware of specific acts of prior harassment by the Lozanos against Roundtree, or that the prior acts of harassment played any role in Ibarra's belief that force was required to protect himself or his property. *See People v. Jones*, 675 P.2d 9, 17 (Colo.1984) (specific instances of victim's prior acts of violence are relevant only if the defendant had knowledge of the prior acts at the time of the offense in question). Accordingly, the trial court's rejection of Roundtree's specific prior act testimony was not an abuse of the trial court's discretion.[12]

## IV

Ibarra next contends that remarks made by the prosecutor while cross-examining Ibarra were unduly prejudicial, tainted the jury, and denied Ibarra a fair trial. We do not agree.

 Cross-examination should be liberally permitted to allow a thorough inquiry into the motives of witnesses. *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *People v. Taylor*, 190 Colo. 210, 212, 545 P.2d 703, 705 (1976). A defendant who testifies is subject to cross-examination and full inquiry on issues of credibility. *People v. Tippett*, 733 P.2d 1183, 1193 (Colo.1987); *see also Tarling v. People*, 69 Colo. 477, 479, 194 P. 939, 941 (1921) (stating that a defendant who chooses to testify is "subject to the general rules as to examination of witnesses, including examination as to matters which tend to show him worthy of belief"). The extent and type of cross-examination is within the sound discretion of the trial court. *Taylor*, 190 Colo. at 212, 545 P.2d at 703.

 On direct examination, Ibarra admitted to a prior felony conviction. During cross-examination of Ibarra, the prosecution then sought to determine where Ibarra had purchased the revolver which he fired on the night of October 12. Ibarra testified that he had purchased the revolver at a gun shop at 20th and Larimer. The prosecution sought to impeach Ibarra's testimony by asking him if he was aware that it was illegal for convicted felons to possess a firearm. The purpose of this line of questioning was to attack Ibarra's credibility by establishing that no gun shop would have sold the revolver to Ibarra knowing that he had been convicted of a felony and that he was lying when he said he had purchased it at a gun shop. The trial court permitted the question because it went to Ibarra's credibility. The jury was previously instructed on the limited purpose for which a prior felony conviction is admissible.[13] Ibarra has pointed to no evidence of jury bias, and absent such a showing, it is presumed that the jury understood and heeded the trial court's instructions. *People v. Moody*, 676 P.2d 691 (Colo.1984); *People v. Gutierrez*, 622 P.2d 547 (Colo.

---

12. Even if a trial court's exclusion of evidence was erroneous, the case will be reversed only if the exclusion affected a substantial right of the party. *See Topping v. People*, 793 P.2d 1168, 1172 (Colo.1990) (holding that errors in the admission of evidence, which were of constitutional dimension, did not require reversal of a criminal conviction, when the error was harmless beyond a reasonable doubt). There is no evidence that the exclusion of Roundtree's testimony affected a substantial right of Ibarra. Thus, even if the trial court's ruling was erroneous, it would not be reversible error.

13. The trial court stated:
Ladies and gentlemen, the evidence that counsel's about to go into regarding a prior felony conviction of the defendant, Mr. Ibarra, is admissible solely insofar as the fact that that conviction may bear upon his credibility as a witness, and for no other purpose. He's entitled to be tried on the charge in this case without reference to any other case.
Moreover, the trial court included the following instruction in its final charge to the jury:
The defendant is entitled to be tried for the crime charged in this case and no other. You may consider testimony of a previous conviction only in determining the credibility of the defendant as a witness, and for no other purpose. When the defendant takes the witness stand, his credibility is to be determined in the same manner as any other witness.

1981). The trial court did not abuse its discretion in admitting the evidence.[14]

### V

Finally, Ibarra contends that his election to testify on his own behalf was not made voluntarily, knowingly, or intelligently, because it followed the trial court's statement that the prosecutor could only inquire into his prior felony conviction for the limited purpose of attacking his credibility as a witness. He asserts that the prosecutorial remarks regarding his purchase of the revolver as a convicted felon violated the limitation. We again disagree.

The key consideration in evaluating a defendant's decision to testify is his desire to tell the jury his version of the allegedly criminal episode and to be heard despite the risk of an attack on his credibility by the disclosure of his prior felony convictions. *People v. Mozee*, 723 P.2d 117 (Colo.1986). Consequently, while the prosecution bears the burden of showing an effective waiver of the right to testify, there is no converse burden on the prosecution to show a voluntary election to testify. *Mozee*, 723 P.2d at 124–26. Where the defendant alleges that his decision to testify was not made voluntarily, knowingly, or intelligently, the defendant bears the burden of producing credible evidence of an invalid waiver of silence. *Id.*[15]

Here, Ibarra does not assert an invalid waiver, or that he would not have testified if he had known he would be questioned about his purchase of the revolver as a convicted felon. The trial court advised Ibarra of the consequences of testifying. Ibarra was told that the prosecution could inquire into prior felony convictions for the purpose of testing his credibility. Ibarra

answered that he understood and that "whatever question I'm asked, I will simply have to answer." Ibarra also stated that his decision to testify was being made "voluntarily, yes, without any tension from anybody." Accordingly, based on the record before us, there is no basis for Ibarra's assertion that his election to testify was not made voluntarily, knowingly, and intelligently.

Judgment affirmed.

---

14. Ibarra complains of another instance when the prosecution asked him whether it is legal for a convicted felon to possess a firearm. An objection was made and the question was not answered.

15. In *Mozee*, we stated:
We think it is highly unlikely that any defendant testifies only because a defense counsel overrides the defendant's specific desire not to testify. We also think it unlikely that a competent defense counsel would allow a defendant to take the stand without a full explanation of the right to remain silent and the possible consequences of waiving that right. We also view as most improbable the notion that any defendant expects to be able to testify without being subject to cross-examination. Thus, we see less need for intervention by the trial court and an on-the-record advisement concerning these matters before the defendant testifies.
*Mozee*, 723 P.2d at 125.