The **PEOPLE** of the State of Colorado,
Plaintiff–Appellee,

v.

**Randy R. METCALF, Defendant–Appellant.**

No. 93CA1531.

Colorado Court of Appeals,
Div. V.

March 21, 1996.

As Modified on Denial of Rehearing
June 6, 1996.*

Certiorari Denied Nov. 12, 1996.

* Taubman, J., would GRANT.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Catherine P. Adkisson, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, State Public Defender, Martin Gerra, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Randy R. Metcalf, appeals the judgment of conviction entered upon a jury verdict finding him guilty of second degree kidnapping and violation of custody in the abduction of his daughter from his former wife's home. We affirm.

Defendant's former wife was granted sole custody of their daughter following the couple's dissolution of marriage. Defendant thereafter abducted the child, keeping her for nine months. Defendant was subsequently arrested and convicted of misdemeanor custodial interference in another state, and the child was returned to the former wife.

Defendant abducted the child a second time, but was apprehended within a few hours and the child was again returned to the former wife.

Defendant's former wife and daughter thereafter moved to a different town. Defendant testified that he was concerned for the safety and welfare of his child, and, after following them to the new town, he began conducting surveillance on his former wife and daughter. Defendant testified that he was concerned about harm to his daughter because of his former wife's lifestyle and wanted eventually to apply for legal custody of his daughter.

Despite his concerns for his daughter's welfare, however, he did not contact the police or department of social services, nor seek custody through negotiation or any court proceedings.

One evening, after six weeks of surveillance, defendant observed that the five-year-old child had been left with a male babysitter. He testified that he watched the babysitter yell at his daughter to turn off her bedroom light and go to sleep.

Defendant left the vicinity and returned around 2:00 a.m. When he returned he observed that the door to the residence was ajar. He entered, saw that the babysitter was asleep, picked up his sleeping daughter, and carried her out of the apartment.

Defendant left the state with the child, and she remained with him for four years until he was arrested.

## I.

Defendant argues that, under *People v. Tippett*, 733 P.2d 1183 (Colo.1987), the trial court abused its discretion by failing either to grant his motion for election between the charged offenses or to instruct the jury that it could find him guilty of only one of the two charges. We disagree.

Section 18–1–408(3), C.R.S. (1986 Repl.Vol. 8B) provides that

> When two or more offenses are … supported by identical evidence, the court upon application of the defendant may require the state, at the conclusion of all the evidence, to elect the count upon which the issues shall be tried. If more than one guilty verdict is returned … the sentences imposed shall run concurrently.

■ The court is vested with discretion under the statute to either grant or deny a motion to elect. *People v. Tippett, supra. See also People v. Bowman*, 669 P.2d 1369 (Colo.1983) (trial court has discretion to require an election of counts).

■ Accordingly, we review the trial court's decision under an abuse of discretion standard. To constitute an abuse of discretion, the trial court's determination must be manifestly arbitrary, unreasonable, or unfair. *People v. Ibarra*, 849 P.2d 33 (Colo.1993). An abuse of discretion standard of review requires an *ad hoc* evaluation of the facts and circumstances of each case. *See People in Interest of J.L.P.*, 870 P.2d 1252 (Colo.App. 1994).

In *People v. Tippett, supra*, the defendant stepfather and the natural mother had failed to return the mother's two children to their

custodial parent after a periodic visitation, instead leaving the state with the children. The children's mother was present and an active participant during the taking.

The stepfather was charged with second degree kidnapping and violation of custody. The court noted that the criminal charges arose out of a bitter custody dispute and that the stepfather and the children's mother had filed numerous complaints with the department of social services, apparently unfounded, alleging physical abuse of the children by the custodial parent. Further, the stepfather had also introduced evidence to show that he was concerned for the children's safety.

The court stated that, while this evidence did not rise to the level of an affirmative defense to violation of custody, it illustrated the "familial nature of the situation." The court held that the trial court had abused its discretion in denying defendant stepfather's motion to elect between the second degree kidnapping charge and a violation of custody charge.

■ Here, defendant argues that the evidence concerning an abuse of discretion is even more compelling because he is the natural father of the child abducted, whereas in *Tippett*, the defendant was merely the stepfather. We disagree.

In contrast with the *Tippett* situation, defendant had never attempted to contact the local police or appropriate child welfare agency regarding his supposed concerns for the safety and welfare of the child, but instead had set up his own surveillance. Further, defendant had never initiated any proceeding to obtain custody of his daughter.

Also, the only evidence that defendant was motivated by concern for the child's safety consisted of his own self-serving statements. By comparison, the prosecution presented evidence indicating he was not so motivated, but rather that he was attempting to punish his former wife for the marital dissolution.

Furthermore, here, defendant had been granted only supervised visitation rights and acted alone and without assistance of any person who had a court approved right to visitation with the child. In contrast, in *Tip-*

*pett,* the court noted that the children's natural mother, who had unsupervised visitation rights and was apparently exercising those rights when the children were taken, was present and an active participant in the taking.

Because the facts of the cases are different, the *Tippett* ruling does not dictate an election between the offenses in the instant matter. Accordingly, we conclude that the trial court did not abuse its discretion in denying the defendant's motion to elect and in allowing the jury to find defendant guilty of both kidnapping and violation of custody.

Defendant's alternative argument that the violation of custody statute is a specific criminal statute that precludes prosecution under the general kidnapping statute was specifically rejected in *People v. Tippett, supra,* and we see no basis to distinguish that ruling here.

## II.

Defendant next argues that there was insufficient evidence to sustain the conviction for second degree kidnapping because the evidence did not demonstrate that defendant "seized" his daughter within the meaning of the statute. We disagree.

Defendant was charged and convicted of second degree kidnapping under § 18–3–302(1), C.R.S. (1995 Cum.Supp.) which provides that:

Any person who knowingly seizes and carries any person from one place to another, without his consent and without lawful justification, commits second degree kidnapping.

Section 18–3–302(2), C.R.S. (1995 Cum. Supp.) provides that:

Any person who takes, entices, or decoys away any child not his own under the age of eighteen years with intent to keep or conceal the child from his parent or guardian or with intent to sell, trade, or barter such child for consideration commits second degree kidnapping.

Defendant argues that second degree kidnapping under § 18–3–302(1), in contrast to second degree kidnapping under § 18–3–

302(2), requires that the accused "seize" the victim and that a "seizure" incorporates the notion of force. He points out that, under § 18–3–302(2), the offender need only "take" a child not his own. Therefore, he reasons, while the evidence would prove that he "took" his daughter, it did not show beyond a reasonable doubt that he "seized" his daughter, and thus, he cannot be guilty of the charged offense. We are not persuaded.

*Black's Law Dictionary* 1219 (5th ed. 1979) defines "seize" to mean "to take possession of forcibly, to grasp, to snatch or to put in possession." *See also People v. Cardwell,* 181 Colo. 421, 510 P.2d 317 (1973) (the offense of kidnapping involves some form of compulsion which, however, need not consist of the use of actual physical force or express threats); *Howe v. People,* 178 Colo. 248, 496 P.2d 1040 (1972) (to take means to seize).

■ Here, contrary to defendant's contention that the evidence had to show that some "force" was used in the abduction to constitute a violation of the statute, the word "seize" encompasses a mere taking. *See People v. Powell,* 716 P.2d 1096 (Colo.1986) (no constitutional requirement that "force" must be an element of the crime nor any indication of legislative intent that "force" must be an element of second degree kidnapping).

Hence, because defendant concedes that the evidence establishes that he "took" the child, sufficient evidence exists to demonstrate that defendant seized the child within the meaning of the statute.

Nevertheless, defendant contends that the General Assembly has criminalized his behavior under § 18–3–304(1), C.R.S. (1986 Repl.Vol. 8B), and that, therefore, the element of "force" must be implied in § 18–3–302(1), C.R.S. (1995 Cum.Supp.). Again, we disagree.

Section 18–3–304(1), C.R.S. (1986 Repl.Vol. 8B) provides that:

Any person, including a natural or foster parent, who, knowing that he has no privilege to do so or heedless in that regard, takes or entices any child under the age of eighteen years from the custody of his parent, guardian, or other lawful custodian commits a class 5 felony.

Defendant contends that the only difference between this statute and the second degree kidnapping statute, when a defendant is a non-custodial natural parent, is that the language of § 18–3–304(1) only requires there to be a "taking," whereas the language of the second degree kidnapping statute requires there to be a "seizure," *i.e.,* a "forcible" taking. We do not agree.

Second degree kidnapping requires the prosecution to prove beyond a reasonable doubt that the person taken did not consent to the charged action and that the action was without lawful justification, whereas the violation of custody statute does not require the proof of those elements. Indeed, the violation of custody statute requires a defendant to raise the affirmative defense of reasonable belief that the actor's conduct was necessary or that a child fourteen or more years old was taken at the child's own instigation before the prosecution must overcome that defense beyond a reasonable doubt.

Hence, there are substantive differences that, in our view, do not support the contention that proof of force is necessary to demonstrate a violation of the second degree kidnapping statute.

### III.

■ Next, we reject defendant's argument that the trial court committed plain error by giving the pattern jury instruction concerning violation of custody because it did not instruct the jury that defendant's violation of the order granting his former wife custody of their daughter had to be done "knowingly."

Section 18–3–304(2), C.R.S. (1986 Repl.Vol. 8B) provides that:

Any parent or other person who violates an order of any district or juvenile court of this state, granting the custody of a child under the age of eighteen years to any person, agency, or institution, with the intent to deprive the lawful custodian of the custody of a child under the age of eighteen years, commits a class 5 felony.

The jury instruction given defining the elements of the offense tracked this statutory language.

Implicit in the language of the statute itself, defendant contends, is the requirement that the offender know that such a custody order exists. Thus, he reasons, the trial court was required by § 18–1–503(2), C.R.S. (1986 Repl.Vol. 8B) to add the culpable mental state of "knowingly" to its instruction, thereby requiring the prosecution to prove that the defendant knew he was violating a court order. We disagree with this argument.

Section 18–1–503(2), C.R.S. (1986 Repl.Vol. 8B) provides that, when there is no culpable mental state expressly designated in a statute defining an offense, a culpable mental state may nevertheless be required with respect to some or all of the elements of an offense if the proscribed conduct necessarily involves such a culpable mental state. *See People v. Moore,* 674 P.2d 354 (Colo.1984). In our view, this section is inapplicable here because the violation of custody statute already contains a mental state requirement that the individual act "with intent to deprive the lawful custodian of the custody of a child."

Section 18–1–503(4), C.R.S. (1986 Repl.Vol. 8B) sets forth the test for determining whether a culpable mental state described in a statute is to be applied to all or only some of the elements of a statute:

> When a statute defining an offense prescribes as an element thereof a specified culpable mental state, that mental state is deemed to apply to every element of the offense unless an intent to limit its application clearly appears.

Here, we conclude that the statutory language requiring intent is limited to the deprivation of custody of the child, and is not extended to the additional elements of the offense. *Cf. People v. Trevino,* 826 P.2d 399 (Colo.App.1991).

In *People v. Tippett, supra,* the supreme court noted that the violation of custody statute focuses upon the protection of children and society from the violation of court orders by individuals who intend to deprive the lawful custodian of custody of the child. We conclude that our reading of the statute furthers this purpose.

Accordingly, the trial court did not commit plain error in failing to require the additional culpable mental state of "knowingly" in its instructions to the jury.

## IV.

Defendant next argues that the trial court erred in removing the issue of consent from the jury's consideration on the second degree kidnapping charge. He asserts that there was evidence from which the jury could have determined that the child assented to going with her father and that, therefore, the issue should have been submitted to the jury. We disagree.

As a matter of law, a minor child cannot consent to being taken by another. *People v. Haynie,* 826 P.2d 371 (Colo.App. 1991). Rather, consent must be given by the individual who has legal custody of the child. *Armendariz v. People,* 711 P.2d 1268 (Colo. 1986).

Here, the child was five years old at the time of the abduction and defendant did not have legal custody of the child. Therefore, the trial court did not err in instructing the jury that consent could not be given by the child.

## V.

Defendant next contends that the trial court erred in denying his motion to dismiss because the information filed by the prosecution demonstrated that the custody charge was barred by the statute of limitations. He argues that the trial court erred in allowing the prosecution to amend the information after the close of the evidence to include the basis for tolling the limitations period. We disagree.

Section 16–5–401(1)(a), C.R.S. (1995 Cum. Supp.) provides that an individual charged with a violation of a custody order may not be prosecuted unless an information is filed within three years of the commission of the offense. However, § 16–5–401(2), C.R.S. (1986 Repl.Vol. 8A) tolls the limitations peri-

od imposed by that statute "if the offender is absent from the state of Colorado."

Here, the information alleging the date of the offense, July 13, 1988, was not filed until July 15, 1992. The information did not state any facts tolling the statute of limitations.

In *Bustamante v. District Court*, 138 Colo. 97, 329 P.2d 1013 (1958), the supreme court held that a court has no jurisdiction to try a defendant under an indictment which does not contain an allegation of a specific offense committed within the limitations period. Under *Bustamante*, when an information alleges the date of a crime that is barred by the statute of limitations, it is necessary that the information expressly allege one or more of the exceptions provided by the statute to toll the running of the limitation period. *See* Crim. P. 7(b).

When an information is insufficient on its face, however, the prosecution may move, pursuant to Crim. P. 7(e), to amend the information. Crim. P. 7(e) provides:

> The court may permit an information to be amended as to form or substance at any time prior to trial; the court may permit it to be amended as to form at any time before the verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

■ Crim. P. 7(e) is to be construed liberally to avoid the dismissal of cases for technical irregularities in an information that can be cured through amendment. *People v. Hertz*, 196 Colo. 259, 586 P.2d 5 (1978).

In *People v. Bowen*, 658 P.2d 269 (Colo. 1983), the court held that when an information is insufficient under *Bustamante*, a court may still have jurisdiction to proceed by allowing the prosecution to amend the faulty information. The *Bowen* court held that a trial court may permit the amendment of an information to allege that an offense occurred within the period of limitations.

*Bowen* is not conclusive on the issue before us, however, because it involved amendment of the information prior to trial, whereas here the trial court permitted amendment after the close of the evidence. Therefore, under the standards of Crim. P. 7(e), the amendment here was permissible only if it was one of form, not substance, and only if it did not charge a different offense and did not prejudice a substantial right of the defendant.

■ The purposes served by a criminal information are to advise the defendant of the nature of the charges, to enable the defendant to prepare a defense, and to protect the defendant from further prosecution for the same offense. *People v. Thomas*, 832 P.2d 990 (Colo.App.1991).

■ In determining whether an amendment is one of form or substance, the court must evaluate the count as alleged in the information, as well as the circumstances surrounding the case. *See Cervantes v. People*, 715 P.2d 783 (Colo.1986).

In *Higgins v. People*, 868 P.2d 371 (Colo. 1994), the prosecution amended an original felony complaint to name three additional victims after the limitations period for charging the offense had run. The supreme court held that, in determining whether an amendment to a charging document filed after the statute of limitations period was valid, a trial court must distinguish between amendments that charge a new or additional offense and amendments that merely correct a defect or insufficiency in the original document. The *Higgins* court indicated that if the amendment merely corrects a defect or insufficiency, the defendant suffers no prejudice, and thus, the amendment will relate back to the date of the original filing and will not be barred by the statute of limitations. However, if the amendment charges a new or additional crime, the amended complaint is barred by the statute of limitations.

In *Higgins*, the court held that amending the criminal complaint did not charge the defendant with any new or additional crimes, but rather simply remedied an insufficient list of victims in the original complaint, and was therefore proper.

■ Likewise, here, we conclude that the amendment to the information did not change the nature of the offense or otherwise prejudice the defendant in the presentation of his defense. Thus, it did not constitute a

change of substance, but merely remedied an insufficiency in the original document, and thus constituted a change of form. *See* W. LaFave & J. Israel, *Criminal Procedure* § 19.2(g) (1984); *People v. Hertz, supra.*

The evidence at trial established that defendant took his daughter in the early morning hours of July 13, 1988, and later that same day left the state with her. The fact that defendant immediately left the state and did not return until after his arrest was not contested and was in fact admitted by the defendant in his testimony.

In addition, the date of the offense was not a material element of the offense, was not an issue at trial, and the amendment did not involve an altered accusation or require a different defense strategy from the one the defendant had chosen under the initial information. *Cf. People v. Moody,* 674 P.2d 366 (Colo.1984) (when time is an essential element of the offense, amendment not permissible after motion for judgment of acquittal made).

Accordingly, we hold that the amendment of the information was one of form that did not charge a different offense or prejudice the substantial rights of the defendant. *See* Crim. P. 7(e); *Cervantes v. People, supra.* Therefore, the amendment was properly allowed by the trial court.

## VI.

Defendant next argues that the trial court erred in permitting the prosecution to cross-examine him for impeachment purposes regarding his prior misdemeanor conviction for custodial interference. He asserts that § 13–90–101, C.R.S. (1987 Repl.Vol. 6A) limits the use of prior convictions for impeachment purposes to felony convictions. We conclude that, under the circumstances presented here, the cross-examination was proper.

Evidence of a misdemeanor charge or conviction is not admissible under § 13–90–101 as bearing upon general credibility of a witness. However, that statute is not intended to prohibit testimony · concerning a misdemeanor charge or conviction for other admissible purposes.

Evidence of a prior arrest, criminal charge, or conviction may be admitted for impeachment purposes when the witness on direct examination has given specific contrary testimony which, if uncontradicted, would likely result in the trier of fact receiving a false or misleading account of a matter which a witness has placed into evidence. *Banek v. Thomas,* 733 P.2d 1171 (Colo.1986). *See also People v. Mejia,* 188 Colo. 120, 534 P.2d 779 (1975) (prosecution allowed to question defendant concerning previous marijuana possession charge after defendant testified on direct examination that, except for drunkenness, he had never been arrested).

Here, during the advisement to defendant concerning his right to testify pursuant to *People v. Curtis,* 681 P.2d 504 (Colo. 1984), the court inquired whether defendant had been convicted of any previous felony. In response, the prosecution indicated that defendant had no prior felony conviction, but that he had pleaded guilty to the misdemeanor of custodial interference. Further, the prosecution stated that, by testifying, defendant "may open up grounds" for impeachment with the misdemeanor conviction. The trial court ruled that defendant could be cross-examined about the conviction.

However, even if the trial court's initial ruling was erroneous, such ruling was harmless. Defendant testified on direct examination that he had no prior arrest record. On cross-examination, the prosecution established that defendant had been convicted in Arizona of custodial interference for the previous incident when he took his daughter and that he knew that he had no authority to take her at the time the incident in question occurred.

Thus, defendant's testimony on direct examination about the lack of an arrest record did indeed open up grounds for cross-examination using the misdemeanor conviction.

Under these circumstances we conclude that the there was no error in allowing the prosecution to question defendant concerning the arrest and conviction for purposes of impeachment.

## VII.

Defendant asserts that the trial court erred in precluding the introduction of evidence regarding his care of the child during the four years following her abduction. He argues that the prosecution was allowed to introduce evidence that he did not care for her properly, but that he was limited in his ability to rebut that evidence. We find no error.

■ CRE 401 provides for the exclusion of irrelevant evidence at trial. A trial court has broad discretion to determine whether tendered evidence is relevant and that decision will be upheld absent an abuse of discretion. *People v. Tippett, supra.*

■ Here, the trial court allowed the prosecution to present limited opinion evidence that defendant had not cared for his daughter properly to refute his claim that he had taken the child in order to provide her with a better environment. The trial court thereafter permitted defendant to present some evidence that he was a good parent, but then precluded certain additional evidence.

Our review of the record indicates that defendant had a fair opportunity to present his evidence. The defendant's care of the child was only relevant as it related to his state of mind at the time he took her from her mother, and therefore, the trial court properly exercised its discretion in limiting the amount of evidence which was introduced on this subject. *See People v. Taylor,* 190 Colo. 210, 545 P.2d 703 (1976).

## VIII.

Finally, we reject defendant's argument that the trial court improperly denied him the opportunity to present a "choice of evils" defense.

■ The defense of choice of evils excuses conduct that would otherwise be criminal if the actor engaged in such conduct as an emergency measure in order to avoid a specific, definite, and imminent injury. *See* § 18–1–702, C.R.S. (1986 Repl.Vol. 8B); *Andrews v. People,* 800 P.2d 607 (Colo.1990).

■ Here, defendant failed to establish that the situation on the evening he took the child posed such a specific, definite, or imminent threat of harm or injury to the child that he had no choice but to abduct her and remove her from the state.

Accordingly, the trial court properly concluded that the defense of choice of evils was not available here.

The judgment of conviction of second degree kidnapping and of violation of custody is affirmed.

ROTHENBERG, J., concurs.

TAUBMAN, J., concurs in part and dissents in part.

Judge TAUBMAN concurring in part and dissenting in part.

Because I believe that *People v. Tippett,* 733 P.2d 1183 (Colo.1987) is controlling on the issue of the motion to elect and also that the majority incorrectly interprets the term "seize" in § 18–3–302(1), C.R.S. (1995 Cum. Supp.), I respectfully dissent from the affirmance of the kidnapping conviction.

## I.

In *People v. Tippett, supra,* the supreme court concluded that the trial court's failure to grant the defendant's motion to elect, or in the alternative, to instruct the jury that it could find the defendant guilty of kidnapping or violation of custody, but not both, was an abuse of discretion because the two crimes were supported by "identical evidence."

In my view, the facts of the present case are not significantly different from the facts in *Tippett* and therefore that case should control. Both cases arose out of a family dispute. Neither Tippett nor the defendant here had legal custody of his stepchildren or child, respectively. However, both defendants expressed concern for the safety and welfare of their children and took the law into their own hands to remedy the perceived danger. In each case, the defendant removed the children from the state and failed to contact the legal guardian. Finally, both defendants were charged and convicted of

both second degree kidnapping and violation of custody.

In addition, unlike the majority, I do not find the factual differences of the two cases to be so substantial or significant that the analysis in *Tippett* would be inapplicable. For example, I do not view as dispositive the fact that, in *Tippett*, the natural mother, who was not the legal guardian, accompanied defendant when he fled the state with the children. Moreover, I do not perceive Tippett's filing of unfounded charges of child abuse against the custodial parents to be more probative of a genuine concern for the child than was defendant's testimony on that same issue here.

Finally, I agree with defendant that there is no legal significance attached to the filing of second degree kidnapping charges under § 18–3–302(2), C.R.S. (1995 Cum.Supp.) in Tippett's case as opposed to similar charges under § 18–3–302(1) against defendant here.

Thus, in my view, because there is no material distinction between the facts or the law in the two cases, I would find, pursuant to the supreme court's holding in *Tippett*, that the trial court abused its discretion in failing to grant defendant's motion to elect or to instruct the jury properly.

## II.

Next, I agree with defendant's alternative contention that the word "seize" in § 18–3–302(1), unlike the term "take" in § 18–3–302(2), is intended to encompass the use of force. In light of that difference, I find the evidence insufficient to prove an essential element of second degree kidnapping.

Although I recognize that the dictionary definitions of "seize" and "take" offer broad interpretations of both words, other tools of statutory construction persuade me that the General Assembly intended those words to have separate and distinct meaning. *See Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) (because of different meanings attributable to the word "use" in federal criminal statute, Supreme Court considers not only the bare meaning of the word but also its placement and purpose in the statutory scheme).

In construing words and phrases in a statute, a court should give some meaning and effect to every word used. *Blue River Defense Committee v. Town of Silverthorne,* 33 Colo.App. 10, 516 P.2d 452 (1973). Moreover, it is presumed that the General Assembly has knowledge of the legal import of the words it uses. *Longbottom v. State Board of Community Colleges,* 872 P.2d 1253 (Colo. App.1993). Courts are therefore not to presume that the General Assembly used statutory language idly and with no intent that meaning should be given to its language. *Blue River Defense Committee v. Town of Silverthorne, supra.* As the Supreme Court recently observed:

> Judges should hesitate to treat [as surplusage] statutory terms in any setting, and resistance should be heightened when the words describe an element of a criminal offense.

*Bailey v. United States, supra* —— U.S. at ——, 116 S.Ct. at 506–07, 133 L.Ed.2d at 481.

Accordingly, because the two words appear in the same statute and the General Assembly could have chosen to use the same word if it intended that they have the same meaning, I would presume that it intentionally chose the word "seize" in § 18–3–302(1) and the word "take" in § 18–3–302(2) and was fully cognizant of their respective meanings. *Cf. People v. Powell,* 716 P.2d 1096 (Colo. 1986) (noting no evidence of legislative intent that "forcibly" in former second degree kidnapping statute was intended to be an element of second degree kidnapping).

In addition, to interpret the terms otherwise would render superfluous a related violation of custody statute, § 18–3–304(1), C.R.S. (1986 Repl.Vol. 8B), which provides:

> Any person, including a natural or foster parent, who, knowing that he has no privilege to do so or heedless in that regard, takes or entices any child under the age of eighteen years from the custody of his parents, guardian, or other lawful custodian commits a class 5 felony.

In enacting a statute, it is presumed that the entire statute is intended to be effective. *People v. Phillips,* 652 P.2d 575 (Colo.1982). Further, a court must adopt the statutory construction that best effectuates the pur-

poses of the entire statutory scheme. *In re M.S. v. People*, 812 P.2d 632 (Colo.1991). Thus, a statute is to be construed as a whole to give consistent, harmonious, and sensible effect to all its parts. *People v. Phillips, supra* (statutes addressing the same subject matter must, if possible, be construed together to give full effect to the legislative purpose of each).

Here, if the words "seize" and "take" are deemed synonymous, any person, including a parent, who takes a child could always be charged with second degree kidnapping, a class two felony, rather than with violation of custody, a class five felony. Hence, § 18–3–304(1) would effectively be rendered meaningless.

However, if "seize" and "take" are given different meanings, the entire statutory scheme that includes kidnapping and violation of custody would be given a sensible and harmonious effect. *See Bailey v. United States, supra,* — U.S. at ——, 116 S.Ct. at 507, 133 L.Ed.2d at 481 (rejecting broad meaning of "use" that would render the statutory term "carry" superfluous on basis that Congress intended "each term to have a particular, nonsuperfluous meaning."); *People v. District Court,* 713 P.2d 918 (Colo.1986).

Under this interpretation, convictions under statutes such as § 18–3–302(1), containing the word "seize," would require proof of some use of force, whereas those statutes using the word "take" would not require proof of force. This interpretation is consistent with two of the more commonly understood definitions for these words: "seize," meaning "to possess or take by force;" and "take," meaning "to get into one's hands or one's hold or possession by a physical act of simple transference." *Webster's Third New International Dictionary* 2057 & 2329–30 (1986).

Moreover, such an interpretation would also be consistent with the General Assembly's intent to punish more severely actors with a higher level of culpability. For example, any person who takes a child with force would be charged with second degree kidnapping under § 18–3–302(1), and any nonparent who takes a child, but does not use force, would be charged with second degree

kidnapping under § 18–3–302(2). However, a parent who takes a child illegally but without using force would only be charged with violation of custody under § 18–3–304(1), a less serious offense than second degree kidnapping, implying that a parent would be less culpable than a stranger. This interpretation effectuates the purpose of the entire statutory scheme and accords distinct meanings to the terms "seize" and "take."

So interpreted, I would conclude that, under the evidence presented, the People failed to establish that defendant "seized" his child and would set aside his conviction under § 18–3–302(1) on this basis.

In sum, on either the basis of the trial court's failure to require the prosecution to elect between the charged offenses or the failure of the prosecution to prove all elements of the offense, I would hold that defendant's conviction for second degree kidnapping should be reversed. I concur in the affirmance of the conviction for violation of custody.