261 P.3d 792 (2011)
Randy KAILEY, Petitioner-Appellant,
v.
Carol CHAMBERS, District Attorney-Appellee.
No. 10CA1209.
Colorado Court of Appeals, Div. II.
June 23, 2011.
*793 Randy Kailey, Pro Se.
Carol Chambers, District Attorney, Andrew Cooper, Chief Deputy District Attorney, Centennial, Colorado, for Attorney-Appellee.
Opinion by Judge DAILEY.
Petitioner, Randy Kailey, appeals the district court's order denying his motion for appointment of a special prosecutor or, in the *794 alternative, a warrant to arrest a particular person. We affirm.

I. Background
In 1985, Kailey was convicted of two counts of aggravated incest involving his daughters, NJ and BK, for which he was sentenced to thirty-two years imprisonment. In 2004, he received information from NJ that DMB, Kailey's former sister-in-law, had sexually assaulted both his daughters and his granddaughter, MM, while they stayed with her at an undisclosed Englewood, Colorado address in Arapahoe County. He later received information that DMB had sexually assaulted BK in 2007.
According to Kailey, in May 2009, he filed documents with the Denver Police Department and District Attorney's office, accusing DMB of sexually assaulting BK beginning in 1996 (when BK was fifteen) and of sexually assaulting four-year-old MM in 2003 or 2004. The Denver District Attorney's office responded that (1) it could not commence a criminal prosecution against DMB because the alleged crimes had occurred outside the City and County of Denver and (2) he should contact the District Attorney's office for the Eighteenth Judicial District instead.
Kailey then sent copies of his daughters' letters and affidavits, as well as independent investigative reports conducted by the Colorado Innocence Project, to both the Englewood Police Department and to Carol Chambers, the District Attorney for the Eighteenth Judicial District. After five months passed without receiving a response from either the police department or the District Attorney, he prepared the motion that is at issue in this appeal; four months later, he filed that motion with the court.
In his motion, Kailey requested appointment of a special prosecutor pursuant to section 16-5-209, C.R.S.2010, and the issuance of a warrant to arrest DMB pursuant to section 16-3-108, C.R.S.2010. Without requiring a response from the District Attorney or conducting a hearing, the district court denied Kailey's motion, finding that he had not met his burden under section 16-5-209 "of overcoming the presumption that the prosecutor acted in accordance with the law and prov[ing] by clear and convincing evidence that the prosecutor's decision was arbitrary and capricious." The court did not explicitly address Kailey's alternative request for a warrant to arrest DMB.

II. Appellate Contentions
On appeal, Kailey contends that, for the following reasons, the trial court erred:
 first, under section 16-5-209, the court abused its discretion when it did not order the District Attorney to (1) respond to his motion and (2) initiate an investigation; and
 second, under section 16-3-108, the trial court erred by not issuing an arrest warrant for DMB.
We address and reject each contention in turn.

III. Section 16-5-209
District attorneys are not part of the judicial branch of government; they belong, instead, to the executive branch. People v. Dist. Court, 632 P.2d 1022, 1024 (Colo. 1981). As executive officers, they have broad discretion in the performance of their duties. Id.; J.S. v. Chambers, 226 P.3d 1193, 1200 (Colo.App.2009). "The scope of this discretion extends to the power to investigate and to determine who shall be prosecuted and what crimes shall be charged." Dist. Court, 632 P.2d at 1024; see also People v. Renander, 151 P.3d 657, 659 (Colo.App.2006) ("[A]s a general matter, the power to initiate, alter, or dismiss charges rests solely within the prosecuting attorney's discretion, and may not be controlled or limited by judicial intervention.").
Section 16-5-209 limits this power, J.S., 226 P.3d at 1200, by providing relief in the event of an unjustifiable refusal to prosecute a person for a crime:
The judge of a court having jurisdiction of the alleged offense, upon affidavit filed with the judge alleging the commission of a crime and the unjustified refusal of the prosecuting attorney to prosecute any person for the crime, may require the prosecuting attorney to appear before the judge *795 and explain the refusal. If after that proceeding, based on the competent evidence in the affidavit, the explanation of the prosecuting attorney, and any argument of the parties, the judge finds that the refusal of the prosecuting attorney to prosecute was arbitrary or capricious and without reasonable excuse, the judge may order the prosecuting attorney to file an information and prosecute the case or may appoint a special prosecutor to do so.
§ 16-5-209.
Because a district attorney's charging decision is afforded a presumption of correctness, there must be a clear and convincing showing that his or her decision not to prosecute was arbitrary or capricious and without reasonable excuse before the court will order prosecution or the appointment of a special prosecutor. See Landis v. Farish, 674 P.2d 957, 959 (Colo.1984). Hence, "[a]bsent a clear abuse of discretion, a judge may not substitute his judgment or discretion for that of the prosecutor." J.S., 226 P.3d at 1201 (quoting Landis, 674 P.2d at 959). We review de novo the district court's application of the statutory abuse of discretion standard (i.e., "arbitrary or capricious and without reasonable excuse") to the district attorney's decision. J.S., 226 P.3d at 1203.

A. The Charging Decision
Ordinarily, when, as here, a person alleges a district attorney's unjustified refusal to prosecute, a trial court should first determine whether the district attorney has made a charging decision not to prosecute. If no such decision has been made, then there has not been a "refusal" to prosecute, as contemplated by section 16-5-209, and no further inquiry is necessary.
In the present case, nothing in the record, other than the passage of time, indicates that the District Attorney had made any decision not to prosecute (or, for that matter, investigate) DMB based on the allegations in Kailey's and his daughters' affidavits. Because the parties on appeal assume that the District Attorney decided not to prosecute, we will do likewise.[1]

B. Lack of a Response
As quoted above, section 16-5-209 states that upon receiving an affidavit alleging the commission of a crime and the unjustified refusal of the district attorney to prosecute, a court "may require the prosecuting attorney to appear before the judge and explain the refusal." (Emphasis added.)
When interpreting statutes, our primary task is to ascertain and give effect to the intent of the legislature in enacting them; we give statutory terms their commonly accepted meaning to discern that intent. People v. Triantos, 55 P.3d 131, 134 (Colo.2002). When the language is unambiguous and the legislative intent reasonably clear, we need not resort to other rules of statutory construction. Id.
The legislature's use of the term "may" indicates a grant of discretion or choice among alternatives. Id. "[T]o say that a court has discretion in resolving an issue means that it has the power to choose between two or more courses of action and that it is therefore not bound in all cases to select one over the other." Carruthers v. Carrier Access Corp., 251 P.3d 1199, 1203-04 (Colo. App.2010) (quoting Bruce W. Higley Defined Benefit Annuity Plan v. Kidder, Peabody & Co., 920 P.2d 884, 891 (Colo.App.1996)).
The legislature, by using the term "may" in section 16-5-209, granted the district court discretion whether to require the prosecuting attorney to appear before the court and explain the refusal to prosecute. See Schupper v. Smith, 128 P.3d 323, 326 (Colo. App.2005) (construing the present version of section 16-5-209 as "providing for an evidentiary hearing at the trial court's discretion, once it had considered the petitioner's affidavit; the explanation of the district attorney, if required by the trial court; and any argument of the parties") (emphasis added).
Thus, we must determine if, under the circumstances here, the court abused that discretion.

*796 C. Failure to Require an Investigation

Initially, we note that, although district attorneys have investigative powers, section 16-5-209 addresses only a district attorney's unjustified refusal to "prosecute"; it says nothing about a district attorney's failure or refusal to "investigate."
The power to prosecute is distinct from the power to investigate. Compare, e.g., Black's Law Dictionary 1341 (9th ed. 2009) (defining "prosecute," as pertinent here, as "[t]o commence and carry out a legal action"; "[t]o institute and pursue a criminal action against (a person)"), and State v. Arculeo, 29 Kan. App.2d 962, 36 P.3d 305, 313 (2001) ("To prosecute is to proceed against judicially. A prosecution is the act of conducting or waging a proceeding in court. . . . It is also defined as the institution or commencement and continuance of a criminal suit; the process of exhibiting formal charges against an offender before a legal tribunal, and pursuing them to final judgment on behalf of the state or government, as by indictment or information.") (quoting State v. Bowles, 70 Kan. 821, 79 P. 726, 728 (1905)), with Black's Law Dictionary at 902 (defining investigate as "[t]o inquire into (a matter) systematically; to make (a suspect) the subject of a criminal inquiry"), and Wright v. Kellogg Co., 289 Mich.App. 63, 795 N.W.2d 607, 610 (2010) (same).
Because statutory restrictions on the powers of district attorneys are "construed as narrowly as possible by the courts," J.S., 226 P.3d at 1201 (quoting People ex rel. Losavio v. Gentry, 199 Colo. 153, 159, 606 P.2d 57, 61-62 (1980)), we interpret section 16-5-209 as providing a remedy only for a district attorney's refusal to file formal criminal charges against an individual, and not for the refusal to investigate criminal allegations. Cf. Henisse v. First Transit, Inc., 247 P.3d 577, 580 (Colo.2011) ("When the legislature specifically includes one thing in a statute, it implies the exclusion of another."). This makes sense: in Colorado, a district attorney's investigative effort ordinarily is supplemental to that of local law enforcement agencies, that is, to that of local police departments and sheriffs' offices. See Ma v. People, 121 P.3d 205, 210 (Colo.2005) ("Police officers are responsible for enforcing criminal laws. They do this by investigating crimes, and arresting, detaining, and assisting in the prosecution of suspected criminals."). Sensibly construed, the statute does not contemplate the court's supplanting a district attorney's authority based merely on the attorney's not performing a function ordinarily undertaken by other law enforcement agencies.[2]

D. Failure to Order Prosecution or Appoint a Special Prosecutor
In Sandoval v. Farish, 675 P.2d 300 (Colo. 1984), the supreme court quoted with approval the following language from American Bar Association, Standards for Criminal Justice Relating to the Prosecution Function § 3.9(b) (3d ed. 1993), regarding guidelines for reviewing a prosecutor's charging decision:
The prosecutor is not obliged to present all charges which the evidence might support. The prosecutor may in some circumstances and for good cause consistent with the public interest decline to prosecute, notwithstanding that sufficient evidence may exist which would support a conviction. Illustrative of the factors which the prosecutor may properly consider in exercising his or her discretion are:
(i) the prosecutor's reasonable doubt that the accused is in fact guilty;
(ii) the extent of the harm caused by the offense;

*797 (iii) the disproportion of the authorized punishment in relation to the particular offense or the offender;
(iv) possible improper motives of a complainant;
(v) reluctance of the victim to testify;
(vi) cooperation of the accused in the apprehension or conviction of others; and
(vii) availability and likelihood of prosecution by another jurisdiction.
675 P.2d at 303.
In a footnote, the supreme court identified other factors that could be also considered: (1) the likelihood of conviction; (2) sufficiency of the evidence; (3) availability of witnesses in corroboration of the offense; (4) credibility of the victim; (5) evidence relating to motive or intent of the offender; (6) seriousness of the injuries inflicted; and (7) the competing demands of other cases on the time and resources of the prosecution. Id. at n. 4.
Applying the pertinent factors here, the court found that
 the complaint was brought by Kailey, who had been convicted of aggravated incest against two of the victims (The court also found that Kailey had "alleged a long-standing pattern of abuse" of the victims and that the Colorado Innocence Project had been involved in investigating that abuse. Read together, these three findings imply that the court believed Kailey's motive for filing his motion was to cast blame on others for the crimes of which he had been convicted.);
 when, at one point, the police were called to DMB's house, BK recanted her story;
 no one in the family believed the allegations;
 BK had also alleged that she had been similarly abused by her ex-husband; and
 the independent investigative reports of the Innocence Project showed that NJ and BK were reluctant to participate in pursuing the allegations.
Based on these findings[3], the court determined that Kailey had not proved by clear and convincing evidence that the District Attorney's decision not to prosecute was arbitrary or capricious. In this regard, the court noted that it was "quite probable that . . . the district attorney came to the conclusion that she would be unable to obtain a conviction."
In light of the significant credibility issues with the daughters' averments, the lack of factual specificity regarding where and when the events occurred, and the passage of time, we too conclude that the District Attorney's decision (assuming there was one) not to prosecute was not arbitrary or capricious.

IV. Section 16-3-108
Kailey also contends that the trial court erred by not issuing a warrant for DMB's arrest. We are not persuaded.
Section 16-3-108 addresses the issuance of an arrest warrant in the absence of an information or complaint:
A court shall issue an arrest warrant only on affidavit sworn to or affirmed before the judge or a notary public and relating facts sufficient to establish probable cause that an offense has been committed and probable cause that a particular person committed that offense.
Section 16-3-108 does not specify who may apply to a court for an arrest warrant. From this statutory silence, Kailey infers that not only law enforcement officers, but private citizens too, may apply for an arrest warrant. We do not agree.
The District Attorney does not dispute Kailey's right, as a private citizen, to seek an arrest warrant under section 16-3-108 for another individual. Because of its jurisdictional nature, however, the issue of Kailey's standing to seek an arrest warrant requires our sua sponte inquiry. See People in Interest of J.C.S., 169 P.3d 240, 244 (Colo.App. 2007).
To determine if standing exists, a court must consider whether a plaintiff was *798 injured in fact and whether the injury was to a legally protected right. Peters v. Smuggler-Durant Mining Corp., 910 P.2d 34, 38 (Colo.App.1995), aff'd, 930 P.2d 575 (Colo. 1997). With respect to the latter requirement, "[a] complaining party may show injury to a legally protected right by demonstrating that the harm allegedly suffered is protected by a statutory or constitutional provision, or by a judicially created rule of law that entitles the complaining party to some form of judicial relief." Sender v. Kidder Peabody & Co., 952 P.2d 779, 781 (Colo.App.1997).
"[I]n American jurisprudence at least, a private citizen [ordinarily] lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Linda R.S. v. Richard D., 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973); see Anderson v. Norfolk & W. Ry., 349 F.Supp. 121, 122 (W.D.Va.1972) ("criminal statutes can neither be enforced by civil action . . . nor by private parties"); see also Gansz v. People, 888 P.2d 256, 257 n. 4 (Colo.1995) (quoting Linda R.S. with approval). Applying that principle, courts have held that a private citizen lacks standing to request the issuance of a warrant for the arrest of another person. See DeMillard v. No Named Defendant, 407 Fed.Appx. 332, 333 (10th Cir. 2011); Larry v. Uyehara, 270 Fed.Appx. 557, 558 (9th Cir.2008); see also Kelly v. Dearington, 23 Conn.App. 657, 583 A.2d 937, 940-41 (1990) (concluding that a citizen has no standing to obtain review of a prosecutor's refusal to seek arrest warrant).
A legally protected right can, of course, be created by statute. However, if the General Assembly wishes to change common law, it must manifest its intent expressly or by clear implication. See, e.g., Vaughan v. McMinn, 45 P.2d 404, 408 (Colo.1997); cf. Hildebrand v. New Vista Homes II, LLC, 252 P.3d 1159, 1172 (Colo.App.2010) ("Statutes are presumed not to alter the common law unless they do so expressly.").
Here, unlike in section 16-5-209, there is no language in section 16-3-108 which either expressly or impliedly authorizes a private citizen to petition the court to take action against a third party.[4] Under the reasoning of the Linda R.S., DeMillard, and Vaughan cases, then, section 16-3-108 cannot be read to authorize a private citizen to seek an arrest warrant.
Further, even if section 16-3-108's silence on the subject would render the statute ambiguous, in construing that section we must presume that "[a] just and reasonable result is intended" and that "[p]ublic interest is favored over any private interest." § 2-4-201(1)(c), (e), C.R.S.2010. In addition, we may also consider the "consequences of a particular construction." § 2-4-203(1)(e), C.R.S.2010. In our view, all three considerations support a construction of section 16-3-108 as not authorizing private citizens to seek arrest warrants. We hold this view for the following reasons:
(1) Most law enforcement officers (i.e., police officers, sheriff's officers, and district attorneys' and the attorney general's investigators) are certified peace officers whose very job it is to investigate crime. See §§ 16-2.5-102, 16-2.5-103, C.R.S.2010. All of those officers are experienced at investigation, and are trained to prepare affidavits and to know the meaning of probable cause and how to apply it. Most lay people are not so experienced or so trained.
(2) Law enforcement officers are subject to additional employment sanctions besides those associated with criminal charges for perjury if they lie or recklessly disregard the truth in an affidavit. Most lay people are not subject to such employment sanctions.
(3) Law enforcement officers are, ideally, objective investigators with no stake in *799 the outcome of a case, and thus, they evaluate the information that they receive without bias. Such objectivity is not presumed from lay people who are "involved" in cases.
For all these reasons, we construe section 16-3-108 as not authorizing a private citizen to seek an arrest warrant for another. Because Kailey had no right to demand that the court issue an arrest warrant in this case, we need not further address the court's failure to issue a warrant here.
The order is affirmed.
Judge CASEBOLT and Judge WEBB concur.
NOTES
[1] Because we conclude that Kailey is not entitled to relief, judicial economy weighs against a remand for further findings concerning this assumption.
[2] To the extent that Kailey asserts that the District Attorney is statutorily required by section 19-3-308(5) and (5.3), C.R.S.2010, to investigate allegations of sexual assault on a child, he is wrong. The investigative duties discussed in those provisions are those of a "local law enforcement agency," which, "as used in part 3 of article 3 of this title, means a police department in incorporated municipalities or the office of the county sheriff." § 19-1-103(74), C.R.S.2010, Kailey's reliance on section 19-3-501(1), C.R.S. 2010, as requiring a District Attorney to investigate is also misplaced. That provision does not require the District Attorney to initiate any sort of investigation, but rather, allows a court to direct the probation department, social services department, or another agency to investigate a petition to remove a child from a home.
[3] The court made an additional finding that neither NJ nor BK reported the alleged abuse to the police. The record is otherwise (i.e., the daughters' affidavits and the investigative reports from the Colorado Innocence Project state that the crimes were reported to the police). However, in our view, this finding was not critical to the district court's decision.
[4] While section 16-5-209 does not expressly authorize action by private citizens, it does so by implication: it presupposes the filing of affidavits with respect to a charging decision by persons other than the governmental officials normally responsible for making that decision. In contrast, nothing in section 16-3-108 implies that persons other than the government officials who customarily seek warrants may do so.