24CA0817 Peo in Interest of SR 01-09-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0817
Fremont County District Court No. 23JV30027
Honorable Kaitlin B. Turner, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of S.R., C.R., Jas. R., Jad. R., and Z.R., Children,

and Concerning G.R. and S.W.,

Appellants.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE TOW
Pawar and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 9, 2025

---

Eric Bellas, County Attorney, Sean R. Biddle, Assistant County Attorney, Cañon City, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant G.R.

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant S.W.

¶ 1    In this dependency and neglect proceeding, S.W. (mother) and G.R. (father) appeal the juvenile court's judgment terminating the parent-child legal relationships with their children. We affirm the judgment.

I.    Background

¶ 2    The Fremont County Department of Human Services filed a petition in dependency and neglect regarding six-year-old S.R., three-year-old twins C.R. and Jas.R., two-year-old Jad.R., and one-year-old Z.R. (the children). Given the children's ages, the case was subject to the expedited permanency planning (EPP) provisions. §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2024.

¶ 3    The petition alleged that C.R. had been hospitalized for diabetic ketoacidosis for the second time in two months, and medical staff had concerns that the parents had missed many medical appointments and were not appropriately managing his condition. The parents were not available when the child was ready to be discharged. Accordingly, a caseworker and law enforcement responded to the family home where they found the home was dirty and bare of furnishings and the parents had not timely refilled C.R.'s medications. The petition further alleged that the parents

1

had a previous dependency and neglect proceeding involving S.R. related to substance use. The Department removed the children and placed them in a foster home in Pueblo.

¶ 4 The juvenile court accepted the parents' admission to the petition and adjudicated the children dependent and neglected. The court adopted treatment plans for the parents requiring that they, among other things, (1) provide a safe and stable home for the children; (2) complete mental health evaluations and engage in recommended treatment; (3) attend regular family time; (4) work with a life skills professional to improve family communication and boundary setting; and (5) attend to the children's medical needs, particularly those of C.R. Mother's treatment plan also required that she complete a substance use evaluation and engage in recommended treatment.

¶ 5 About seven months after filing the petition, the Department moved the children to a foster home nearly three hundred miles away in Cortez, Colorado. The parents reported that they moved to Cortez shortly after the children were moved, but at the time of the termination hearing it was unclear where the parents were living.

¶ 6     The children's guardian ad litem (GAL) later moved to terminate mother's and father's parental rights.  The juvenile court held a hearing and the parties filed written closing statements.  The court then terminated the parent-child legal relationships between the parents and the children.

## II.     Reasonable Efforts

¶ 7     Both parents argue that the juvenile court erred when it found the Department made reasonable efforts to reunify the family because it placed the children a five-and-a-half hour drive from Fremont County.  Mother also argues that the Department did not make reasonable efforts because it did not refer her for a medication evaluation.  We are not persuaded.

### A.     Applicable Law and Standard of Review

¶ 8     The juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent and neglected; (2) the parent has not complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the parent's conduct or condition is unlikely to change in a reasonable time.  § 19-3-604(1)(c), C.R.S. 2024.

3

¶ 9      When determining fitness under section 19-3-604(1)(c), the juvenile court must consider whether the county department of human services made reasonable efforts to rehabilitate the parent and reunite the parent with the child.  §§ 19-1-103(114), 19-3-208, 19-3-604(2)(h), C.R.S. 2024.  The reasonable efforts standard is satisfied if the department provides appropriate services in accordance with section 19-3-208.  § 19-1-103(114).  In turn, section 19-3-208 requires the department to provide screenings, assessments, and individual case plans for the provision of services; home-based family and crisis counseling; information and referral services to available public and private assistance resources; family time; and placement services.  § 19-3-208(2)(b).

¶ 10      In assessing whether the department used reasonable efforts, the juvenile court should consider whether the services provided were appropriate to support the parent's treatment plan, *People in Interest of S.N-V.*, 300 P.3d 911, 915 (Colo. App. 2011), by "considering the totality of the circumstances and accounting for all services and resources provided to a parent to ensure the completion of the entire treatment plan," *People in Interest of My.K.M. v. V.K.L.*, 2022 CO 35, ¶ 33.  The parent is ultimately

responsible for using the services to comply with the plan, *People in Interest of J.C.R.*, 259 P.3d 1279, 1285 (Colo. App. 2011), and the court may consider a parent's unwillingness to participate in treatment in determining whether the department made reasonable efforts, *see People in Interest of A.V.*, 2012 COA 210, ¶ 12.

¶ 11    Whether a juvenile court properly terminated parental rights presents a mixed question of fact and law because it involves the application of the evidentiary facts to the termination statute. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. We review the court's factual findings for clear error, but we review de novo the court's legal conclusions based on those facts. *People in Interest of S.R.N.J-S.*, 2020 COA 12, ¶ 10. In particular, the ultimate issue of whether the Department satisfied its reasonable efforts obligation is a legal conclusion we review de novo. *People in Interest of A.S.L.*, 2022 COA 146, ¶ 8.

## B.    Analysis

¶ 12    The juvenile court found that the Department made reasonable efforts. We agree.

¶ 13    The caseworker referred father for a mental health evaluation in Fremont County and made another referral to a provider in

5

Cortez after the parents moved. The Department referred mother to two providers for evaluations, one for mental health and one that addressed both mental health and substance use. The Department also referred mother for sobriety testing. The caseworker referred both parents to a parenting class. And it arranged for education regarding diabetes and asthma training so the parents could learn more about C.R.'s needs. The Department also provided family time both in Fremont County and Cortez.

¶ 14    The caseworker testified that she was aware that the parents had a van and the Department provided gas vouchers to help them attend treatment and family time. The caseworker knew that the van needed tires and offered the parents bus passes and rides, but they declined. The caseworker also arranged for a life skills worker and an in-home worker to help the parents understand and engage in the treatment plan requirements. The Department referred the parents to people who could help them find housing.

¶ 15    Both parents argue that, despite these actions, the Department did not make reasonable efforts because they placed the children in a foster home in Cortez.

¶ 16    First, we note that the caseworker, who the court found credible, testified that both parents preferred that the children be moved to a single foster home far away rather than be separated but stay closer to Fremont County.

¶ 17    The parents assert, nonetheless, that they could not visit the children because they only had their van for transportation, which was unreliable. But, according to the caseworker, the parents assured her that they could make it to Cortez in their van, and the Department paid for gas. And, as previously noted, the Department also offered other modes of transportation, such as the bus, but the parents declined.

¶ 18    Father further asserts that the children's relocation required the parents to move to Cortez, and that their treatment services were delayed as a result. The caseworker testified that she was able to arrange a caseworker from Montezuma County to help the parents navigate services after they moved. The caseworker visited the family in Cortez and while there she and mother met with a treatment provider to review available services and make appointments. The caseworker acknowledged that the Department had to enter "single service contracts" with providers in Cortez but

testified that any delay in getting services arranged was attributable to the parents' failure to inform the caseworker that they were moving so that she could get services in place.

¶ 19 Mother also asserts that the Department failed to refer her for a medication evaluation. Mother's treatment plan did not include a medication evaluation, but each of the treatment providers where mother completed a mental health assessment recommended one. The caseworker testified that the treatment providers who conducted the evaluations had psychiatrists on staff who would have evaluated mother's medication had she engaged in treatment. But because mother cut short her participation in treatment, the medication evaluation was not done.

¶ 20 In sum, based on the evidence in the record, the juvenile court did not err when it found that the Department made reasonable efforts. Rather, it was the parents' lack of compliance with those efforts that inhibited the Department's ability to reunify the family.

### III. Motion to Change Venue

¶ 21 Father also argues that the juvenile court reversibly erred when it denied his motion to change venue after the parents and the children had moved to Cortez. We are not persuaded.

## A. Jurisdiction

¶ 22    As a threshold matter, we address and reject the Department and the GAL's argument that we lack jurisdiction to review father's issue because he did not timely appeal the order denying the motion to change venue.

¶ 23    Dependency and neglect proceedings are subject to the finality requirements of C.A.R. 1(a)(1). *People in Interest of P.L.B.*, 743 P.2d 980, 981 (Colo. App. 1987). A final judgment is "one which ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceeding." *Id.* (quoting *D.H. v. People*, 561 P.2d 5, 6 (Colo. 1977)).

¶ 24    Section 19-3-201(2), C.R.S. 2024, allows the court to transfer a case to the county where the parent resides if the transfer would not be detrimental to the child's best interests. Post-dispositional orders that do not terminate the right to parental custody are generally not final and appealable. *See People in Interest of H.R.*, 883 P.2d 619, 620 (Colo. App. 1994).

¶ 25    We conclude that the order denying the transfer of venue was not a final, appealable order because it did not effectuate any

9

change in permanent custody or terminate parental rights. *Id.* at 621. The order did not dispose of all the issues among the parties (e.g., whether the children would return home, or parental rights would be terminated). Accordingly, father could not have appealed the order denying the motion to change venue until a final order terminating parental rights was entered. *See* C.A.R. 1(a)(1).

B. Applicable Law and Standard of Review

¶ 26 Under section 19-3-201, all proceedings in a dependency and neglect case must be commenced in the county in which the child resides or is present. § 19-3-201(1)(a). For purposes of determining proper venue, a child who is placed in the legal custody of a county department shall be deemed for the entire period of placement to reside in the county in which the child's legal parent or guardian resides or is located. § 19-3-201(1.5).

¶ 27 Both parties note that the court may, on the motion of any interested party, transfer the case to the court in the county where the child's legal parent resides. § 19-3-201(2). We note that this provision begins with qualifying language: "When the proceedings are commenced pursuant to this article 3 in a county other than that of the child's residence . . . ." There is no dispute that, at the

time the Department commenced this case, the county of the child's residence was Fremont County and that is the county in which the case was filed. Thus, the applicability of this provision is not immediately apparent.

¶ 28 That being said, all parties treat this provision as the language governing the dispute. Essentially, they appear to read it as saying if, after the commencement of the proceedings, the county of the child's residence changes because the parents move, venue can be changed. We view the statute as being reasonably susceptible of that reading. Thus, we assume without deciding that the statute applies as the parties have applied it.

¶ 29 Nevertheless, the statute does not bestow upon any party a *right* to transfer venue. First, the provision says that the juvenile court "may" transfer venue. The General Assembly's use of the word may in a statute generally denotes discretion and a choice between two or more courses of action. *Kailey v. Chambers*, 261 P.3d 792, 795 (Colo. App. 2011). When reviewing such discretionary acts, we will only reverse if we discern an abuse of that discretion. *People v. Fry*, 74 P3d 360, 369 (Colo. App. 2002). A court abuses its discretion when its decision is manifestly arbitrary,

11

unreasonable, or unfair, or if it is based on an erroneous understanding or application of the law. *People in Interest of M.W.*, 2022 COA 72, ¶ 12.

¶ 30    Moreover, the statute identifies certain circumstances in which the court is instructed not to transfer venue, including when

- the transfer is not in the child's best interest;

- the legal parent has a history of frequent moves, "unless there is evidence of stability in the most recent move indicating an intent to remain in the new residence for six or more months, such as the legal parent . . . has signed a lease whose term is six or more months;"

- the case is likely to be closed within three to six months;

- the transfer will disrupt services; or

- the case is an EPP case, in which case the court can presume the transfer of proceedings without good cause that results in a delay is not in the child's best interest.

*See* § 19-3-201(2)(a), (c)-(f).

¶ 31    Finally, we must "must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." C.R.C.P. 61. "[A]n error affects a substantial right only if

12

'it can be said with fair assurance that it substantially influenced the outcome of the case or impaired the basic fairness of the trial itself.'" *People in Interest of R.J.*, 2019 COA 109, ¶ 22 (quoting *Bly v. Story*, 241 P.3d 529, 535 (Colo. 2010)).

## C.   Analysis

¶ 32     Father's motion to change venue asserted that he and mother had faced homelessness and a lack of reliable transportation throughout the case and had recently relocated to Cortez following the placement of the children there.  Father contended that if venue were transferred he and mother would "be dealing with the local County Department of Human Services and Treatment providers" and that "family time between children and parents would be greatly increased."  Father acknowledged that at the time of his motion the GAL had already filed a motion to terminate in Fremont County, but "hoped" that the hearing would be "vacated or continued."  The Department and the GAL objected to the motion arguing that the transfer of venue would disrupt the continuation of services being provided in Fremont County.

¶ 33     The juvenile court denied the motion without a hearing, noting that the case was an EPP case and finding that a change in venue

13

would result in a delay in the judicial proceedings, that the parents had not demonstrated stability related to their recent move to Cortez indicating an intent to remain in the new residence for six or more months, and that the change of venue would be detrimental to the children's best interest.

¶ 34　On appeal, father does not address any of the juvenile court's stated bases for denying the requested venue change.  Instead, he asserts that the court's denial of his motion created significant barriers for the parents to engage in services and undermined their prospects for reunifying with the children.  But he does not explain why he and mother were unable to engage in services either in Fremont or Montezuma County.

¶ 35　As discussed in our consideration of the parents' reasonable efforts challenge, the caseworker placed referrals in both counties, but neither parent engaged in treatment.  Moreover, the Department provided assistance to help the parents travel to Cortez to visit the children and, while the parents were living in Cortez distance was not a barrier to regular family time.  Additionally, the caseworker testified, and neither parent disputes, that the parents

14

did not have a permanent residence in Cortez and were no longer living there by the time of the termination hearing.

¶ 36    Father also asserts that the juvenile court erred because it did not hold a hearing prior to deciding the motion.  Father relies on section 19-3-201(2.5), which states,

> The county attorney of a county that files a motion to change venue pursuant to this section shall immediately provide notice of the motion to the proposed receiving county. Upon receipt of a motion to change venue, the court shall set a hearing to rule on the motion.

¶ 37    The Department and the GAL contend that this section governs only motions filed by a county attorney, rather than by a parent, and accordingly a hearing on the motion is not required. We agree.

¶ 38    Moreover, even if the court should have conducted a hearing, father fails to explain how he was harmed by the court's decision not to do so.  *See* C.R.C.P. 61; *M.W.*, ¶ 12.  Father provides no proffer of any evidence or argument he would have presented at a hearing, or how a hearing would have changed the court's decision.

15

¶ 39    Accordingly, either the juvenile court did not err when it denied father's motion to change venue or any error was harmless and, thus, does not warrant reversal.

## IV.    Disposition

¶ 40    We affirm the judgment.

JUDGE PAWAR and JUDGE SCHUTZ concur.