23CA1453 Peo v Mowers 11-20-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1453
Weld County District Court No. 22CR281
Honorable Meghan Patrice Saleebey, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Michael Zane Mowers,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE LUM
Graham* and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 20, 2025

Philip J. Weiser, Attorney General, Caitlin E. Grant, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Albani Law, LLC, Peter B. Albani, Denver, Colorado; Peak Legal Services, LLC, Douglas T. Cohen, Todd Narum, Northglenn, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Defendant, Michael Zane Mowers, appeals the judgment of conviction entered on a jury verdict finding him guilty of four counts of sexual assault on a child (SAOC) by one in a position of trust (POT) as a pattern of abuse (POA), and two counts of SAOC-POA. We affirm.

## I.    Background

¶ 2    In March 2021, Mowers' ex-girlfriend's daughter (the victim) informed a school counselor that Mowers had sexually abused her, prompting an investigation by the Town of Nunn police department.

¶ 3    Jon Geiger — a Town of Nunn police officer and interim police chief — was involved in the initial investigation of the victim's allegations. After the initial investigation, Geiger applied for an arrest warrant, to which he attached his supporting affidavit. The court issued the warrant, Geiger arrested Mowers in April 2021, and Mowers was charged in Case No. 21CR737.

¶ 4    Shortly after Mowers' arrest, the State of Colorado notified the district attorney that Geiger's Peace Officer Standards and Training (P.O.S.T.) certification had expired on January 9, 2021— before he had started the investigation into the victim's allegations. Thus, Geiger could not act (and had not acted) as a "certified peace officer"

1

when he investigated and arrested Mowers. *See* §§ 16-2.5-102, -105, C.R.S. 2025 (providing that police officers are peace officers who must be P.O.S.T. certified). Defense counsel received this information in discovery.

¶ 5 Because Geiger wasn't P.O.S.T. certified, the court determined he had no authority to seek an arrest warrant for Mowers or arrest him, rendering the arrest unlawful. *See* § 16-3-102, C.R.S. 2025 (providing for arrest by a peace officer); § 16-3-108, C.R.S. 2025 (providing conditions for issuing an arrest warrant); *Kailey v. Chambers*, 261 P.3d 792, 798-99 (Colo. App. 2011) (holding that a private citizen cannot seek an arrest warrant under section 16-3-108).[1] The court dismissed Case No. 21CR737 without prejudice and instructed the prosecution that it could seek another arrest warrant for Mowers if a certified peace officer reviewed the

---

[1] We express no opinion about whether the lack of a P.O.S.T. certification precludes an individual from seeking an arrest warrant when that individual is otherwise considered a "law enforcement officer" or "peace officer." *See Kailey v. Chambers*, 261 P.3d 792, 798-99 (Colo. App. 2011) (noting that section 16-3-108, C.R.S. 2025, is silent on the qualifications of a person seeking an arrest warrant but concluding that the section doesn't authorize "private citizens" to seek a warrant because (among other things) they don't have the same experience, training, objectivity, or threat of employment sanctions as "law enforcement officers" do).

investigation evidence and provided a new affidavit. However, the court cautioned that the affidavit shouldn't rely on any of Geiger's statements.

¶ 6    Two days later, Jennifer Fick, an investigator at the Weld County District Attorney's office and a certified peace officer, filed a new application for an arrest warrant, and the prosecution also refiled its case against Mowers. The refiled case — Case No. 22CR281 — underlies this appeal. Mowers pleaded not guilty.

¶ 7    After a trial, Mowers was convicted of four counts of SAOC-POT-POA and two counts of SAOC-POA for repeatedly sexually assaulting the victim. He was sentenced to a term of eighteen years to life in the custody of the department of corrections.

¶ 8    Mowers appeals. He contends that the trial court erred by (1) declining to dismiss the case due to Geiger's "unlawful" initial investigation; (2) declining to dismiss the case as a sanction for the prosecution's untimely disclosure of additional information concerning Geiger; (3) violating his right to a speedy trial; and (4) permitting the jury to view the victim's forensic interview.

## II. Geiger's Investigation

### A. Additional Facts

¶ 9    During the initial investigation of the victim's allegations, Geiger, accompanied by Seargent Richard Henry, interviewed the victim at her school. Geiger's and Henry's body-worn cameras recorded the interview. Geiger also referred the victim to Life Services for a forensic interview, which was conducted by Chris Eisenhauer. Geiger attended the interview (though he didn't participate) and logged the video of the interview into evidence. Finally, Geiger requested that Detective Paul Gesi set up and conduct a pretext phone call between the victim and Mowers.[2]

¶ 10    Fick's warrant affidavit was based on her review of "the reports of fellow officers [and] the statements of the victim and witnesses." Fick also reviewed the bodycam footage of the victim's initial interview with Geiger, the video of her forensic interview with Eisenhauer, and the transcript of the pretext phone call. Though the affidavit also mentioned "personal investigation," Fick didn't re-

---

[2] In sexual assault cases, a pretext phone call is a call, controlled by law enforcement, between the victim and alleged perpetrator. The purpose of the call is to obtain incriminating statements or expose false reports.

interview the victim or conduct other investigation apart from reviewing the statements, videos, and transcripts collected by Geiger, other investigators, and Eisenhauer. After a preliminary hearing, the court found that probable cause supported Mowers' arrest.

¶ 11    Mowers filed multiple motions asking the court to dismiss the case and suppress "all evidence" because the charges and the evidence were based on Geiger's "unlawful [and] unsanctioned" investigation. The court denied his motions.

## B.    Due Process

¶ 12    Mowers first argues that Geiger's conduct (investigating the case despite his lapsed P.O.S.T. certification) and the prosecution's conduct (submitting an arrest warrant affidavit based on the evidence collected during Geiger's initial investigation) violated his due process rights. Mowers doesn't explicitly raise the outrageous governmental conduct doctrine; however, the arguments he does make implicate that doctrine, and we construe his arguments accordingly.

### 1. Applicable Law

¶ 13    Colorado recognizes a due process claim for outrageous governmental conduct. *Bailey v. People*, 630 P.2d 1062, 1068 (Colo. 1981). Outrageous governmental conduct "violates fundamental fairness and is shocking to the universal sense of justice." *People v. Medina*, 51 P.3d 1006, 1011 (Colo. App. 2001). "Instances where trial courts have found outrageous government conduct in Colorado are vanishingly rare, and the threshold for such a finding appears to be exceedingly high." *People v. Burlingame*, 2019 COA 17, ¶ 12. We review a trial court's decision denying a motion to dismiss based on outrageous governmental conduct for an abuse of discretion. *Medina*, 51 P.3d at 1012.

¶ 14    Only one Colorado appellate case has upheld a finding of outrageous governmental conduct. *Compare People v. Auld*, 815 P.2d 956, 958-59 (Colo. App. 1991) (holding that the prosecution's filing of fictitious charges against an undercover investigator posing as a criminal defendant, designed to investigate the defense attorney he hired, warranted dismissal because the prosecution "perpetrated a fraud upon [the] court" and "duped" the court into "playing an active part in the prosecutorial function of the executive

6

branch") *with Effland v. People*, 240 P.3d 868, 879 (Colo. 2010) (holding that the prosecutor did not commit outrageous governmental conduct by telling an officer that a defendant was not entitled to an attorney during a hospital room interrogation) *and People in Interest of M.N.*, 761 P.2d 1124, 1125-26, 1129-30 (Colo. 1988) (holding that a police officer did not commit outrageous governmental conduct by encouraging a minor to purchase drugs, providing the minor with illegal drugs, and encouraging the minor to commit other crimes).

## 2.    Analysis

¶ 15    We perceive no error in the trial court's denial of Mowers' motion to dismiss on due process grounds. While we, like the trial court, are disturbed by Geiger's lapsed P.O.S.T. certification, this record contains no evidence that he deliberately deceived the victim, her school, or the forensic interviewer.[3] Likewise, the record contains no evidence that the prosecution intended to deceive or gain some advantage over the victim, the forensic interviewer, the

---

[3] We express no opinion about whether Geiger knew that his P.O.S.T. certification had lapsed. We merely note the absence of record evidence to that effect in this case.

7

court, or Mowers by having Geiger participate in the initial investigation or by basing the second arrest warrant affidavit on the evidence from the initial investigation. Finally, although Mowers argues that Fick should have conducted an "independent" investigation before filing her warrant affidavit, he doesn't explain how re-interviewing the victim, subjecting the victim to a second forensic interview, or conducting a second pretext phone call[4] would have changed the outcome of the case. *Cf. People v. Walker*, 2022 COA 15, ¶ 17 (To establish an outrageous governmental conduct claim based on an alleged intrusion into the attorney-client relationship, the defendant must show (1) the government's objective awareness of an ongoing attorney-client relationship between the defendant and a third party; (2) "deliberate intrusion into that relationship"; and (3) "actual and substantial prejudice.").[5]

---

[4] We note that, while Mowers occasionally said during the pretext call that he didn't want to have "this conversation" over the phone and expressed concern about the victim recording the call, he didn't admit to any wrongdoing, repeatedly denied knowing "what [the victim was] talking about," and repeatedly said there was no "story" to get "straight."

[5] We reject Mowers' related contention that Fick's affidavit was somehow unlawful or invalid because it was based on the evidence from the initial investigation rather than her "independent"

8

C.   "Unlawful" and "Tainted" Investigation

1.   Applicable Law

¶ 16    The United States and Colorado constitutions provide a

guarantee against unreasonable searches and seizures.  U.S. Const.

amend. IV; Colo. Const. art. II, § 7.  The exclusionary rule forbids

the use of evidence obtained in violation of this constitutional right

at trial.  *Casillas v. People*, 2018 CO 78M, ¶ 19.  "The rule, which

operates as a judicially created remedy, seeks to safeguard [the

right] generally through the rule's deterrent effect."  *Id.*  Similarly,

the "fruit of the poisonous tree" doctrine prohibits the use of

"evidence derived from information acquired by the police through

unlawful means."  *People v. Lewis*, 975 P.2d 160, 170 (Colo. 1999).

¶ 17    "Probable cause for an arrest warrant exists if there are

reasonable grounds to believe that the defendant participated in the

---

investigation.  Mowers argues that section 16-3-108,  requires a
peace officer to sign the affidavit supporting probable cause for an
arrest.  *See Kailey*, 261 P.3d at 798-99 (holding that private citizens
cannot apply for an arrest warrant under the section).  Even if
that's the case, we don't see how it invalidates Fick's affidavit.  Fick
is a peace officer, and Mowers doesn't cite any authority requiring a
warrant affidavit to be based on the affiant's firsthand investigation
or an investigation commenced by a P.O.S.T. certified peace officer.

crime in question." *People v. Young*, 987 P.2d 889, 891 (Colo. App. 1999).

### 2. Analysis

¶ 18     As best we understand his arguments, Mowers first contends that because Geiger wasn't P.O.S.T. certified at the time he conducted the pre-arrest investigation, all evidence he collected or assisted in collecting — the initial interview, the forensic interview, and the pretext phone call — was obtained "unlawfully" and must be suppressed. However, Mowers doesn't cite, and we can't find, any authority supporting the proposition that only a P.O.S.T. certified peace officer may interview a victim, request the assistance of a peace officer to prepare and conduct a pretext phone call, or refer a victim for a forensic interview. Furthermore, we can't discern how the victim's voluntary cooperation in two interviews and a pretext phone call violated Mowers' right against unreasonable searches and seizures. Therefore, we cannot say that the evidence was "unlawfully" obtained.

¶ 19     Next, Mowers contends that the evidence from Geiger's initial investigation is inherently unreliable or "tainted" due to his

10

misconduct and, therefore, cannot form the basis for probable cause. We reject this contention, too.

¶ 20 The nature of the evidence collected during the initial investigation eliminated any need for the prosecution or the trial court to rely on Geiger's subjective view of the facts when determining whether there was probable cause to arrest Mowers. It's true that Geiger conducted the initial victim interview, but that interview took place in the presence of Seargent Henry (who was P.O.S.T. certified) and was recorded by Seargent Henry's bodycam. And while Geiger referred the victim for the forensic interview and was present for it, that interview was wholly conducted by Eisenhauer (a trained forensic interviewer) and was also video recorded. Likewise, Geiger's involvement in the pretext phone call was limited to (1) requesting assistance from Detective Gesi and (2) being present while the call took place. Detective Gesi — not Geiger — wrote the script for the call and helped the victim conduct it. And as the trial court noted, there's no evidence that Geiger had any influence over the questions that were asked during the

forensic interview, the script for the pretext phone call, or the victim's responses and behavior during either of those events.[6]

¶ 21    If the information in Fick's affidavit had been based solely on *Geiger's account* of the initial interview, the forensic interview, and the phone call, there may have been reason to question the reliability of that information.  However, Fick didn't rely solely on Geiger's account.  Instead, she reviewed "everything in the file" (including the bodycam footage, the video of the forensic interview, and the transcript of the pretext call) and "came to [her] own conclusion" about probable cause.

¶ 22    For the above reasons, we conclude that the trial court didn't err by declining to dismiss this case or suppress the evidence.

---

[6] To the extent Mowers argues that Geiger influenced the victim in her initial interview by his use of certain sexual terms or phrases, we don't perceive how this purported deficiency precludes the use of the evidence to determine probable cause or the admissibility of the evidence at trial.  Rather, it was the proper subject of cross-examination.  And indeed, defense counsel repeatedly questioned the victim and Eisenhauer about Geiger's use of adult terminology in his interview.  *See infra* Part V.

### III. Untimely Disclosure Related to Geiger

#### A. Additional Facts

¶ 23    Recognizing that Geiger would be subject to potentially incriminating cross-examination regarding his misrepresentations about his status as a peace officer if he were called to testify, Mowers filed a motion to have the court advise Geiger of his Fifth and Sixth Amendment rights and appoint him counsel.  *See* U.S. Const. amends. V, VI.

¶ 24    At a hearing, the court granted Mowers' motion to appoint advisory counsel for Geiger.  Mowers asked the court whether the jury would hear the reason why Geiger wasn't testifying.  The court explained that if Geiger testified, the court would advise him of his rights outside the jury's presence and that the jury would not hear the reason he wasn't testifying if he invoked.  The court further explained that Mowers could elicit testimony about Geiger's missing P.O.S.T. certification and call attention to the fact that the prosecution hadn't asked him to testify.

¶ 25    Mowers subpoenaed Geiger to testify at trial.  Geiger filed a motion to quash the subpoena, explaining that he intended to invoke his Fifth Amendment rights.  Ten days before trial, the

parties attended a pretrial conference at which they discussed Geiger's motion to quash. Defense counsel indicated that he had no objection to quashing Mowers' subpoena based on Geiger's invocation. The court quashed the subpoena.

¶ 26 Later that day, the prosecution disclosed documents indicating that their office had previously investigated Geiger for the activities he conducted during the time when his P.O.S.T. certification had lapsed. The investigation closed after the investigator concluded that the documents and information gathered indicated that Geiger believed his P.O.S.T. certification was active when he accepted employment as a Town of Nunn police officer.

¶ 27 Mowers filed a motion to dismiss the case based on the late disclosure, asserting that the documents indicated that the district attorney had "absolved" Geiger of criminal culpability and "had no intent to charge him." Thus, he argued, Geiger's assertion of his Fifth Amendment rights was a "sham." Alternatively, he requested that the court sanction the prosecution by permitting him to impeach Geiger in absentia by (1) informing the jury that Geiger wasn't testifying because his testimony would potentially subject

him to criminal prosecution and (2) introducing evidence of misconduct Geiger committed during his employment with other police departments[7] (the impeachment sanction).

¶ 28    On the first day of trial, the prosecution acknowledged that the disclosure was untimely and clarified that it had not offered and would not offer Geiger immunity related to the P.O.S.T. certification issue.

¶ 29    The court denied Mowers' motion to dismiss and declined to impose the impeachment sanction.  While expressing frustration with the prosecution for its lack of diligence, the court concluded that (1) the untimely disclosure wasn't the result of bad faith and (2) Geiger would still be able to assert a Fifth Amendment privilege if he were called to testify.  However, the court reiterated that Mowers could call witnesses to testify that Geiger wasn't P.O.S.T. certified; that he wasn't acting as a peace officer during the

---

[7] Geiger was terminated from the police department of Ellis, Kansas, for falsifying testimony in court.  He was also involuntarily discharged from the Del Norte police department after an investigation regarding his credibility during a drug investigation.  Finally, Geiger was convicted for harassing a suspect during his time as a Georgetown police officer.

15

investigation; and that there had been an investigation into his misrepresentation of his peace officer status. It also agreed to instruct the jury about Geiger's P.O.S.T. certification status.

### B. Applicable Law and Standard of Review

¶ 30     "A prosecutor is legally and ethically obligated to disclose to a criminal defendant evidence or information . . . that is favorable to the defendant and material to either guilt or punishment, including exculpatory and impeaching evidence." *People v. Herrera*, 2012 COA 13, ¶ 16. In the event of a discovery violation, "the decision whether to impose a sanction is within the sound discretion of the trial court." *People v. Lee*, 18 P.3d 192, 196 (Colo. 2001). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair. *Id.*

¶ 31     When considering whether to impose a sanction, the trial court must exercise its discretion "with due regard for the purposes of the discovery rules themselves and the manner in which those purposes can be furthered by discovery sanctions." *Id.* A court must consider (1) the reason for the delay in providing the discovery; (2) any prejudice the defendant has suffered as a result

of the delay; and (3) the feasibility of curing such prejudice by way of a continuance. *Id.*

¶ 32    "Under certain circumstances, the exclusion of evidence or even complete dismissal can be proper remedies to assure compliance with discovery orders." *Id.* However, "[d]ismissal is a drastic sanction and must be reserved for situations where no other sanction will 'restore as nearly as possible the level playing field that existed before the discovery violation.'" *People v. Daley*, 97 P.3d 295, 298 (Colo. App. 2004) (quoting *People v. Dist. Ct.*, 808 P.2d 831, 837 (Colo. 1991)).

## C.    Analysis

¶ 33    Mowers argues that the trial court erred by denying the motion to dismiss and declining to impose the impeachment sanction. We disagree.

¶ 34    The trial court concluded, and the People don't dispute, that the failure to timely disclose the records of the district attorney's investigation was a discovery violation. But Mowers doesn't explain how he was prejudiced by the delay. As we understand his briefing, Mowers asserts he was harmed because the court precluded Geiger's testimony due to Geiger's invocation of his Fifth

17

Amendment rights. However, the district attorney's decision to "close" the investigation (and the late disclosure of records regarding the closure) had no effect on Geiger's ability to invoke his rights because the district attorney didn't extend immunity to him. In other words, Mowers was in the same position that he would have been in if he had timely received the records. Because Mowers wasn't prejudiced by the late disclosure, the court didn't abuse its discretion by not dismissing the case or imposing the impeachment sanction.

¶ 35    Mowers also contends that the court erred by not dismissing the case as a sanction for cumulative discovery violations. Specifically, he argues that the prosecution (1) failed to preserve the victim's initial written statement and didn't disclose that the statement once existed until just before the preliminary hearing; (2) failed to disclose records from the Department of Human Services (DHS) until late October 2022; and (3) failed to disclose that it advised the victim's mother to object to being deposed in a custody proceeding involving the victim's half-sister.

¶ 36    Mowers received the information about the victim's initial written statement in March 2022, the information about the DHS

18

records in October 2022, and the information about the victim's mother no later than November 2022. We assume, without deciding, that these disclosures were both required and untimely. However, any prejudice from the untimely disclosure was largely cured because Mowers' trial took place in April 2023. We therefore perceive no abuse of discretion.

## IV.  Speedy Trial

¶ 37    Mowers contends that the trial court violated his speedy trial rights by granting two trial continuances at the prosecution's request. We disagree.

### A.    Applicable Law and Standard of Review

¶ 38    Section 18-1-405, C.R.S. 2025 requires that a defendant be brought to trial within six months of his plea of not guilty. *Sweet v. Myers*, 612 P.2d 75, 77 (Colo. 1980). Generally, when a trial is not brought within this period, the court must dismiss the charges against the defendant. *People v. Valles*, 2013 COA 84, ¶ 29; § 18-1-405(1).

¶ 39    However, subsection (6) of the statute contains exceptions. § 18-1-405(6). As relevant here, an additional delay of up to six months is allowed if the prosecution requests a continuance and

19

demonstrates that (1) material evidence is unavailable; (2) the prosecution exercised due diligence to obtain the evidence; and (3) there are reasonable grounds to believe the evidence will be available on the date to which the trial is sought to be continued. § 18-1-405(6)(g)(I); *People v. Scialabba*, 55 P.3d 207, 209 (Colo. App. 2002). Thus, if all three elements are met, the duration of the continuance is excludable from the speedy trial period. § 18-1-405(6)(g)(I); *Snyder v. Moss*, 703 P.2d 1311, 1314 (Colo. App. 1985).

¶ 40    Evidence is material if it is "more than merely probative or relevant." *Valles*, ¶ 33 (quoting *People v. Roberts*, 146 P.3d 589, 595 (Colo. 2006)). However, the evidence need not be indispensable to justify a reasonable delay. *Id.*

¶ 41    A trial court's grant of a continuance under section 18-1-405(6)(g)(I) is reviewed for an abuse of discretion. *Valles*, ¶ 21; *People v. Wolfe*, 9 P.3d 1137, 1142-43 (Colo. App. 1999). A court abuses its discretion if its decision is manifestly arbitrary, unreasonable or unfair. *People v. Ibarra*, 849 P.2d 33, 38 (Colo. 1993). When assessing a trial court's decision to grant a continuance, the reviewing court "look[s] to facts as they were

known at the time of the trial court's decision." *Roberts*, 146 P.3d at 594.

## B. Discussion

¶ 42     Mowers contends that the trial court erred by granting two prosecution-requested continuances. We address each continuance in turn.

### 1. Eisenhauer Continuance

#### a. Additional Facts

¶ 43     Mowers' original speedy trial deadline was December 7, 2022. The court set a five-day trial beginning on October 31, 2022. The prosecution subpoenaed Eisenhauer, the forensic interviewer, to testify. About a month before trial, the prosecution requested a continuance because Eisenhauer, after receiving the subpoena, informed them that she would be out of the country during the week of trial.

¶ 44     At a hearing on the motion, the court concluded that (1) Eisenhauer was unavailable; (2) the prosecution exercised due diligence in attempting to secure her attendance at trial by serving her a subpoena and following up via email; and (3) that she was material to the prosecution's case. The court granted the

continuance over Mowers' objection and reset the trial for February 21, 2023.

### b. Analysis

¶ 45　Mowers first contends that the trial court abused its discretion by concluding that Eisenhauer's testimony was material. We disagree.

¶ 46　At the time the trial court made its decision, the court was aware that defense counsel had endorsed expert witnesses to testify in the areas of memory, suggestibility, confabulation, manipulation of a child's memories, and whether recollection of certain memories was reliable. Thus, the court reasoned, the defense's experts might challenge the victim's interviews and Eisenhauer's methodology. The prosecution had also endorsed Eisenhauer as an expert witness in the field of forensic interviewing. Additionally, as the court noted, the integrity of the forensic interview took on heightened importance because of the concerns regarding Geiger's involvement in the initial victim interview. Given these circumstances, the court didn't abuse its discretion by concluding that Eisenhauer's testimony was material. *See Valles*, ¶ 33.

¶ 47   To the extent Mowers contends that the court abused its discretion by concluding that Eisenhauer was unavailable, we also disagree.  As best we can discern, Mowers contends that the court erred because the prosecution gave inconsistent information about the date of Eisenhauer's return to the country, at first stating she wouldn't be back until November 4, then November 8 or 9, and then finally November 5.  However, the record reflects that any inconsistency was due to the prosecution receiving new information and communicating that information to the court in real time during the continuance hearing.  (During much of the hearing, Eisenhauer was occupied with a forensic interview).  And in any event, given that Eisenhauer expected to return on November 5, she would be out of the country for all five days of the trial.

### 2.   Fick Continuance

#### a.   Additional Facts

¶ 48   Just before jury selection on the first day of the reset trial (February 21, 2023), the prosecution informed the court that Fick, their advisory witness, had become unavailable due to the sudden hospitalization of her child.  The prosecution sought a continuance due to Fick's unavailability, and the court granted it over Mowers'

objection. The court said it would attempt to work with the parties to reset the trial within the speedy trial deadline, but it also concluded that it could reset the trial outside the speedy trial deadline under section 18-1-405(6)(g)(I).[8] Mowers moved to dismiss, arguing that the continuance violated (or improperly compelled him to waive) his speedy trial rights. The court denied his motion. After scheduling discussions, trial was reset to April 24, 2023.

### b. Analysis

¶ 49     Mowers first contends that the trial court abused its discretion by concluding that Fick was unavailable. We disagree.

¶ 50     Mowers argues that the prosecution didn't clearly articulate and was "unsure" about the "time, the length and details" of Fick's unavailability beyond "the first day of jury selection." The record belies that assertion. After initially informing the court that Fick's child had been hospitalized, the prosecutor indicated that she didn't yet have any details regarding Fick's availability for the remainder

---

[8] There appears to have been significant confusion about the effect of an "unavailability" continuance on the speedy trial deadline. However, because we conclude that the court didn't err by granting either continuance, this issue doesn't affect our analysis.

24

of the trial period. But later in the hearing, the prosecutor explained that "moments ago," she learned that hospital staff informed Fick that her child would be in the hospital "at least" through the end of that week. The court didn't abuse its discretion by concluding that Fick was unavailable. To the extent Mowers suggests that Fick could have been available virtually, the court also didn't abuse its discretion by declining to compel Fick to "pay attention on Webex" while her child was in the hospital receiving treatment.

¶ 51    Next, Mowers argues that Fick's potential testimony wasn't material. We reject this contention, too. At the time of the continuance, the court was aware that Fick had interviewed many of the prosecution's witnesses, been present for the forensic interview of the victim's half-sister, and taken photographs for evidence. Most importantly, Fick had requested the arrest warrant and submitted the supporting affidavit after the prior case was dismissed. As the court noted, her actions (or lack thereof) related to the warrant and affidavit had "been the subject of more than one proceeding" and were the source of "extreme, high contention between the parties." Under these circumstances, we conclude that

25

the court didn't abuse its discretion by determining that Fick was material to the prosecution's case. *People v. Rhea*, 2014 COA 60, ¶ 58 (noting that, under the abuse of discretion standard, the test is whether the trial court's decision fell within a range of reasonable options, not whether we would reach a different result). (To the extent Mowers argues otherwise based on Fick's trial testimony, we aren't persuaded. We must evaluate the trial court's decision based on the circumstances before it at the time it granted the continuance. *Roberts*, 146 P.3d at 594.).

### 3. Conclusion

¶ 52 In summary, both the Eisenhauer and the Fick continuances fell within the exception provided by section 18-1-405(6)(g)(I). Thus, the duration of both continuances — from October 31, 2022 to February 21, 2023 and from February 21, 2023 to April 24, 2023 — was excludable from the speedy trial period. § 18-1-405(6)(g)(I); *Snyder*, 703 P.2d at 1314. Accordingly, we conclude that Mowers' speedy trial rights weren't violated.[9]

---

[9] We don't address Mowers' constitutional right to speedy trial because he provides a developed constitutional argument for the first time in his reply brief. *People v. Boles*, 280 P.3d 55, 61 n.4

## V.    The Victim's Forensic Interview

¶ 53    Mowers next contends that the trial court erred by admitting and publishing to the jury almost the entirety of the victim's forensic interview.  We discern no error.

### A.    Applicable Law and Standard of Review

¶ 54    Prior consistent statements are admissible to rehabilitate a child sex assault victim when their credibility has been attacked. *People v. Eppens*, 979 P.2d 14, 21 (Colo. 1999).  When the victim's testimony is attacked solely based on "specific facts," "only prior consistent statements regarding those specific facts are relevant and admissible." *People v. Elie*, 148 P.3d 359, 362 (Colo. App. 2006).  However, when "the impeachment is general and not limited to specific facts . . . the jury should have access to all the relevant facts, including consistent and inconsistent statements." *Id.*

¶ 55    When a child victim's credibility is broadly attacked, the victim's forensic interview may be admitted to provide the jury with

(Colo. App. 2011) (declining to address an argument raised for the first time in a reply brief); *see also In re Marriage of Dean*, 2017 COA 51, ¶ 31 (noting that we do not consider arguments made for the first time in a reply brief "or those that seek to expand upon the contentions . . . raised in [the] opening brief").

a complete picture of the victim's credibility and place the testimony in context. *Eppens*, 979 P.2d at 22; *see also People v. Miranda*, 2014 COA 102, ¶¶ 2, 20 (admission of entire recorded interview was proper because defendant broadly attacked victim's credibility).

¶ 56 A trial court has substantial discretion in deciding questions concerning the admissibility of evidence. *See Ibarra*, 849 P.2d at 38. "Deciding what constitutes general impeachment is [also] vested in the trial court's discretion." *Miranda*, ¶ 17. A court abuses its discretion if its decision is manifestly unreasonable, arbitrary, or unfair. *Ibarra*, 849 P.2d at 38.

## B. Additional Facts

¶ 57 Before trial, the prosecution moved to admit the victim's forensic interview into evidence, and the defense objected. The court reserved its ruling regarding the interview's admission until trial.

¶ 58 During trial, the defense advanced several direct and indirect attacks on the victim's credibility:

- In its opening statement, defense counsel suggested that the victim was convincing when telling lies because she

did a "good job calling . . . Mowers and saying things to him that weren't true."

- Defense counsel extensively cross-examined the victim about multiple instances of text message and in person contact between the victim and Mowers that sometimes showed affection and didn't include sexual contact. After each instance, defense counsel highlighted that Mowers wasn't "inappropriate" in his response to or contact with the victim.

- During cross-examination, defense counsel suggested that the victim had a motive to lie about the sexual assaults by asking the victim about her disdain for Mowers, specifically highlighting that the victim thought Mowers was an "a\*\*hole" because he harmed her mother.

- Defense counsel's opening statement and cross-examination of the victim suggested that Geiger's use of sexually charged words and phrases during the initial interview influenced the victim's later statements in the forensic interview.

29

- Similarly, defense counsel asked Eisenhauer whether she had watched Geiger's interview with the victim prior to conducting the forensic interview (she hadn't) and asked about the steps she typically took to guard against "suggestibility" when interviewing child sexual assault victims.

- Defense counsel attempted to undermine the statements the victim gave to Geiger by questioning the victim's school counselor (who was present during the initial interview) and Eisenhauer about whether they were aware that Geiger wasn't a certified peace officer when working with him.

- Defense counsel questioned Suvi Miller, the clinical social worker and therapist who worked with the victim, about the victim's mental health.

- Defense counsel asked Detective Gesi whether he was aware if the victim had "anxiety issues" and whether he knew that the victim had asked Mowers to gift her a truck and regarded Mowers as her "best friend."

¶ 59     Later during trial, the court allowed a substantial portion of the interview to be played for the jury because it concluded that defense counsel had attacked the victim's credibility "generally" and that the forensic interview would help give the jury a complete picture of her statements.[10]  But the court provided a limiting instruction informing the jury that they could consider the forensic interview "only as it goes to credibility."

## C.     Analysis

¶ 60     Based on the record, the court didn't abuse its discretion by concluding that defense counsel attacked the victim's credibility broadly, instead of focusing on "specific facts," because defense counsel suggested that (1) the victim had a motive to lie about the sexual assaults; (2) the victim was good at misleading Mowers during the pretext call; (3) the victim's allegations were heavily influenced by Geiger's use of certain terminology during the initial interview; (4) the nature of Mowers' relationship with the victim was different than that portrayed in her allegations; and (5) the victim

---

[10] The court redacted approximately the first two minutes of the interview because it was "dead air."

31

had mental health problems. *Elie*, 148 P.3d at 362. Accordingly, the court didn't abuse its discretion by playing the interview for the jury and providing an appropriate limiting instruction. *Eppens*, 979 P.2d at 22.

## VI. Disposition

¶ 61 Judgment affirmed.

JUDGE GRAHAM and JUDGE BERGER concur.